**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| DRAGON JADE INTERNATIONAL, LTD., a British Virgin Islands limited company, | Civil Action No. _____ |
| | 8:17cv 2422 T 27 TBM |
| *Plaintiff,* | |
| v. | |
| ULTROID, LLC, a Nevada corporation; ULTROID MARKETING DEVELOPMENT CORP, a Florida corporation; ULTROID TECHNOLOGIES, INC.a Florida corporation, | |
| *Defendants.* | |

## COMPLAINT

### INTRODUCTION

1.     Plaintiff Dragon Jade International, Ltd. ("Dragon Jade"), entered into two separate agreements with Defendants, one through which Defendants pledged certain of their assets related to Defendants' medical device product to securitize certain amounts that Dragon Jade lent to defendants or were otherwise owed to Dragon Jade by Defendants, and the other that granted Dragon Jade the exclusive option to purchase all of Defendants' assets.

2.     Notably, the two agreements that are the subject of this litigation were the byproduct of Defendants breach of an earlier agreement, the International Distribution Agreement between Dragon Jade and Ultroid Technologies, Inc. dated June 29, 2015 ("Distribution Agreement") in connection to Defendant's product, Ultroid Hemorrhoid Management System (the "Ultroid Product" or "product"). Dragon Jade was forced to

1

4814-0902-1777.v2

initiate arbitration proceedings against Defendants under the Distribution Agreement because, among other things, Defendants failed to deliver products that were ordered and purchased by Dragon Jade from Defendants.

3.      Due to Defendants' mismanagement of its business, the U.S. Food and Drug Administration ("FDA") issued a warning letter to Defendants on August 27, 2015, citing various quality control violations with respect to its manufacture and marketing of the Ultroid Product. Unable to correct these violations, on September 26, 2016, Defendants initiated a voluntary recall of all of the Ultroid Products and has not returned to market.

4.      In an effort to resolve arbitration proceedings and to stave off the hemorrhaging caused by Defendants failure to properly operate the business, Dragon Jade and Defendants entered into: (1) Exclusive Option and Remediation Agreement made as of January 19, 2017 ("Option Agreement"); and, (2) Security Agreement as of January 20, 2017 ("Security Agreement") (collectively referred to as the "Agreements" when not otherwise specifically identified). Attached as Exhibits "A" and "B," respectively, is a copy of the Option Agreement and the Security Agreement. The purpose of the Option Agreement was for Dragon Jade to lend both funds and expertise to help Defendants accomplish what they could not do on their own—correct the deficiencies in their manufacturing and quality control sufficient to to permit the Ultroid Product to return to the market by meeting FDA requirements, which was critical to Defendants' business survival. In return, Defendants granted Dragon Jade an exclusive option to acquire its assets related to the Ultroid Product following completion of the remediation of the Ultroid Product. Additionally, Defendants granted Dragon Jade a security interest in the Ultroid Product assets as security against the

4814-0902-1777.v2

amounts Dragon Jade committed to the remediation of the Ultroid Product as well as other

debts and liabilities of Defendants to Dragon Jade.

5.     In addition to the Agreements, various UCC Financing Statements were also

filed that afforded Dragon Jade a first priority lien and security interest over all of the Ultroid

Product assets of the Defendants. Attached as Composite Exhibit "C" are copies of the UCC

Financing Statements, which were filed on January 30, 2017 with the State of Florida and, in

the case of Ultroid , LLC, also in the State of Nevada. The "Ultroid Assets" to which the

UCC Financing Statements pertain are, as defined in the Option Agreement, the following:

the FDA 510(k) premarket notifications K023706, K030315 and all other marketing and

regulatory authorizations granted throughout the world for the Ultroid Product, U.S. Patent

No. 8131380, US Patent No. 9179966, Canada Patent No. 2597892, U.S. registered

trademark No. 3526435, U.S. registered trademark No. 1485175 and all other intellectual

property rights of Defendants in or related to the Ultroid Product.

6.     As more fully detailed below, Dragon Jade seeks damages for Defendants'

breach of the Agreements and, alternatively, to foreclose the security interests granted under

the Security Agreement (as well as assert its rights under the companion UCC Financing

Statements), and to protect its rights under the Option Agreement including by, among other

things, obtaining declaratory and injunctive relief as provided for in the Option Agreement.

### PARTIES

7.     Plaintiff Dragon Jade is a publicly traded British Virgin Islands limited

company, with its principal place of business in Hong Kong, China. Non-Party Glenn

Henricksen is a consultant to the Board of Directors of Dragon Jade and was charged with

3

implementing the Agreements between the parties.

8.      Defendant Ultroid Marketing Development Corp ("Ultroid Marketing") was and is a Florida corporation with its principal place of business in Tampa Florida.

9.      Defendant Ultroid, LLC ("Ultroid") was and is a Nevada corporation with its principal place of business in Tampa, Florida.  Ultroid Marketing is the sole member of Ultroid.

10.     Ultroid Technologies, Inc. ("Ultroid Technologies") was and is a Florida corporation with its principal place of business in Tampa, Florida.

11.     Ultroid, Ultroid Marketing and Ultroid Technologies will collectively be referred to as the "Ultroid Entities" or the "Defendants."

12.     Non-Party Michael Knox was and is the manager of Ultroid and was and is Secretary and a member of the Board of Directors for each of Ultroid Marketing and Ultroid Technologies.  Michael Knox executed the Agreements on behalf of the Ultroid Entities.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000 exclusive of interest, costs and attorneys' fees.

14.     This Court has personal jurisdiction over the Ultroid Entities because they are doing business in the state, and have committed wrongful acts within the state including breaching a contract and causing damage in this state, all of which have a nexus to this action.

4

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) and Local Rule 1.02(c) because Defendants maintain their principal place of business within this judicial district and division, and because a substantial part of the events that gave rise to the Plaintiff's claims (and those that will take place going forward) took place within this judicial district and division.

16.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

### The Option Agreement

17.     Dragon Jade and the Ultroid Entities entered into the Option Agreement, which provides, in part, that Dragon Jade is granted the exclusive option to purchase the "Ultroid Assets"[1] (primarily the regulatory marketing authorizations and intellectual property rights related to the Ultroid Product) on certain terms that include:  (1) Dragon Jade's agreement to fund and manage the performance of  certain remediation tasks with respect to the Ultroid Product; and, (2) Dragon Jade's agreement to stay the earlier filed arbitration that resulted from the Ultroid Entities failure to comply with the earlier Distribution Agreement. *See* Ex. A at p. 1; §§2.1, 2.6, 2.9 and 3.

18.     The Remediation Tasks to be performed by Dragon Jade were defined in Exhibit C of the Option Agreement and principally concerned the creation and completion of a design history file for the remediated Ultroid Product and the population of the Device

---

[1] The Ultroid Assets are defined in Exhibit A to the Option Agreement.

4814-0902-1777.v2

Master Record with respect to this medical device. Additionally, the Remediation Tasks required the establishment of a medical device quality management system for the remediate Ultroid Product and completion of Underwriters' Laboratories certification of the remediated Ultroid Product together with ongoing application for CE certification of the remediated Ultroid Product in Europe.

19.     The Option Period (as defined in the Option Agreement, §2.2) is to remain open and does not expire until thirty (30) days after the completion of Milestone 2 (defined in the Option Agreement at Exhibit C with reference to completion of the above-described Remediation Tasks). Milestone 2 relates to the performance of the remediation activities required under the Option Agreement following completion of the Design History File and population of the Device Master Record, and, at the time of this filing, the Design History File is not complete, the Design Master Record has not been populated. aMilestone 2, the triggering point for the 30-day clock on closing of the Option period, is *not yet* complete and the Option Period has therefore *not* expired.

20.     The exclusive option that is the subject of the Option Agreement is the right of Dragon Jade to purchase all of the assets of the Ultroid Entities related to the Ultroid Product; the list of material terms to be included in an Asset Purchase Agreement, the vehicle for Dragon Jade to acquire the Ultroid Assets at the end withinthe Option Period to the extent it decided to exercise its option, are included as an exhibit to the Option Agreement. *See* Option Agreement at §2.4 and Exhibit B to the Option Agreement.

21.     In addition to the Security Agreement discussed below, the Option Agreement itself states:

6

To secure (i) the payment of the Remediation Amount when due; (ii) the Outstanding Debt, (iii) reimbursement for the amounts paid by Optionee on behalf of Ultroid for insurance premiums, and (iii) [sic] any and all obligations and liabilities incurred as Liquidated Damages, Ultroid hereby grants to Optionee a security interest in all of the following (collectively, the "Collateral"): All right, title and interest in Ultroid in and to all of the following, whether now owned or hereafter arising or acquired and wherever located: All Ultroid Assets and any and all claims, rights and interests in any of the Ultroid Assets, and all guaranties and security for any of the above, and all substitutions and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties) of, any and all of the above, and all of Ultroid's books relating to any and all of the above. Ultroid agrees to execute a security agreement concurrently with the execution of this Agreement to be filed with the appropriate governmental office in the State of Florida and with the United States Patent and Trademark Office.

Option Agreement, §4.1.

22.    The Option Agreement also makes clear that it stands not simply on its own, but must be taken with the Asset Purchase Agreement and any related agreements, including the Exhibits to the Option Agreement, as the full understanding and agreement of the parties. Option Agreement, §6.6.

23.    After execution of the Option Agreement, Dragon Jade has and continues to honor its contractual obligations including performing the Remediation Tasks outlined in Exhibit C to the Option Agreement and paying all sums required under the Option Agreement. Since the execution of the Agreements in January 2017, Dragon Jade, principally through its representative Mr. Henricksen has been in ongoing communication with Defendants through Mr. Knox concerning the performance of the Remediation Tasks, the negotiation of an Asset Purchase Agreement for the purpose of Dragon Jade's exercise of its option upon completion of the Remediation Tasks as well as planning for an anticipated closing of such Asset Purchase Agreement. Such communications have been through

4814-0902-1777.v2

multiple in-person meetings as well as frequent telephone communications regarding the progress of the Remediation Tasks. The last in-person meeting between representatives of Dragon Jade and Defendants occurred in New York City on August 15, 2017 between Mr. Henricksen, Mr. Knox and Dr. Lai, Dragon Jade's chief executive officer; at this meeting the parties actively discussed the remaining steps to be undertaken to complete the transaction for the sale of the Ultroid Assets to Dragon Jade. Subsequent to that meeting, on September19, Mr. Knox personally attended an event at the facilities of TÜV SÜD America, Inc. concerned with the initial electro-magnetic compatibility testing of the partially remediated Ultroid Product and discussed such test results with Mr. Henricksen by telephone.

24.     Throughout this interactive communication Dragon Jade was having with Defendants on the pace and performance of the remediation by Dragon Jade, the remaining steps to take by Dragon Jade toward the exercise of its Option and anticipated closing of the purchase agreement, Defendants at no time mentioned any problem or complaint to Dragon Jade about Dragon Jade performance or any matter related to the remediation tasks. As such, Dragon Jade had no reason to believe that Defendants had any complaint or problem with Dragon Jade's conduct and performance of the remediation tasks.

25.     In addition to any other remedies available to Dragon Jade, the Option Agreement provides:

> The parties agree that due to the unique nature of the Ultroid Assets, there can be no adequate remedy at law for any breach of Ultroid's obligations under this Section 2, that any such breach may result in irreparable harm to Optionee or its Affiliates, and therefore, that upon any such breach or any threat thereof, Optionee shall be entitled to seek appropriate equitable relief in addition to whatever remedies it might have at law. Moreover, since the exact damage to Optionee or its Affiliates arising from a breach by Ultroid of the covenants contained in this Section 2 will be difficult to prove with specificity, the parties agree that if a court of competent jurisdiction

8

determines that Ultroid breached the covenants set forth in this Section 2, Ultroid shall pay as liquidated damages to Optionee an amount equal to $2,000,0000 for each; provided, however that such damages may be increased by such court or an agreement among the parties (collectively, "Liquidated Damages").

Option Agreement, §2.8.

26.     The Option Agreement is governed by Florida law (Option Agreement, §6.5) , and that any notices must be in writing. Option Agreement, §6.2.

27.     On September 22, 2017, to Dragon Jade's surprise and befuddlement, the Ultroid Entities sent a letter to Dragon Jade indicating that it was terminating Dragon Jade's exclusive option effective immediately.  A copy of that letter is attached as Exhibit D hereto. At the time of the issuance of this letter, Milestone 2 was not complete, nor was it required to be complete and, thus, the Ultroid Entities had no right or authority to terminate Dragon Jade's right to the exclusive option under the Option Agreement.  Moreover, while the letter wrongfully alleged that the option had lapsed in mid-March of 2017, Defendants through Mr. Knox had actively participated in Dragon Jade's Remediation Tasks and had solicited additional funds from Dragon Jade for the performance of the Remediation Tasks and preservation of the Ultroid Assets during the next six months.  At no time prior to Mr. Knox's precipitous letter of September 22 did Defendants make any statement or engage in any conduct with Dragon Jade consistent with the allegation that the option period had lapsed.

28.     The exclusive option granted under the Option Agreement is irrevocable (Option Agreement, §2.1), except in circumstances of a breach.  In an effort to improperly terminate the exclusive option, the Ultroid Entities alleged a purported breach, stating that the "Exhibit C of the Agreement details the Timeline for beginning and completing each

9

Phase or Milestone. Phase 2 was to begin Jan. 30, 2017 and be complete on or by Feb. 15, 2017. This date would commence the beginning of the Option Period. That period expired on or about March 17, 2017. That date having passed and no waiver being granted by us, this letter shall serve as Notice of Breach of our Agreement and Termination of the Option effective immediately." *See* Exhibit C.

29.     Notably, Exhibit C to the Option Agreement does not provide that Milestone 2—which is the touchstone for the beginning of the Option Period under the Option Agreement— must be complete on or by Feb. 15, 2017. The September 22, 2017 letter issued by the Ultroid Entities fails to appreciate the distinction between "Phase 2" and Milestone 2, two separate and distinct things. It is the completion of Milestone 2 that triggers the start of the Option Period, not the completion of Phase 2. Moreover, Defendants are incorrect in stating that there was a specific contractual deadline for the completion of any of the phases of the Remediation Tasks. Rather, the Remediation Tasks are defined with respect to the completion of tasks and the dates are merely goals and estimates. The condition of the Ultroid Product was found to be substantially worse than anticipated at the signing of the Agreements and consequently the Remediation Tasks required more time and expenditure by Dragon Jade than estimated in Exhibit C of the Option Agreement.

30.     Milestone 2, appearing later in time occurs upon the completion of Phase 3. While completion of Phase 2 is a necessary event along the path to completion of Phase 3, Phase 2 alone was not nor could it ever be designated as a triggering point for Milestone 2, much less a triggering point for the 30-day runoff after Milestone 2. Exhibit C of the Option Agreement included a proposed timeline for payment of remediation expenses as well as

10

goals for the completion Phases 1 and 2. However, Defendants subsequently acknowledged and agreed through Mr. Knox that the Remediation Tasks required to achieve each of Phases 1 and 2 would require more funds and time than originally contemplated. A total of $111,040 in Remediation expenses were paid by Dragon Jade and a minimum of an additional $54,500 in Remediation expenses are expected to be expended by the completion of the Remediation of the Ultroid Product. Separately, Dragon Jade has lent to Ultroid Marketing an additional $40,000 to allow Ultroid to meet other obligations such as purchasing Director's and Officer's liability insurance, legal expenses associated with the maintenance of certain of the Ultroid Assets, and other actions deemed critical by Dragon Jade and Defendants to pursue the remediation of the Ultroid Product under the Option Agreement in connection with Phases 1 and 2 of the Remediation Tasks. There are not even aspirational dates for making specific payments associated with Phase 3 or its completion. *See* Exhibit C to Option Agreement. Although Dragon Jade had the obligation to make the payments associated with Phase 3 (and did so), there was never any date certain by which Phase 3 was to be complete, by agreement or otherwise.

31.     In short, the letter of September 22, 2017 is contrary to the plain language of the Option Agreement. The purported termination by the Ultroid Entities is an artifice created by the Ultroid Entities in an effort to "better deal" Dragon Jade after-the-fact by attempting to sell the assets subject to the Option Agreement (which are also protected under the Security Agreement) to a third party in violation of the Agreements.

32.     On September 28, 2017, Dragon Jade provided notice to the Ultroid Entities that its purported efforts to terminate Dragon Jade's exclusive option were invalid and that

11

they had a duty to preserve the assets that are the subject of the Agreements. Attached as Exhibit E is a copy of the notice letter sent by Dragon Jade to the Ultroid Entities.

33.     Since that time, the Ultroid Entities have made clear that they have no intention of honoring the terms of the Option Agreement and, upon information and belief, are attempting to sell or otherwise hypothecate the assets subject to the Agreements to a third party.

*The Security Agreement*

34.     As provided for in the Option Agreement, the parties also entered into a Security Agreement. Through that agreement, as well as the Option Agreement, the Ultroid Entities pledged and granted a security interest in, including a first priority lien, of "all right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising acquired:  (i) all Ultroid Assets and any and all claims, rights and interests in any of the Ultroid Assets; (ii) all guaranties and security for any items set forth in (i); (iii) all substitutions and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties) of, any and all of the items set forth in (i) and (ii); and (iv) all of Ultroid's books relating to any and all of the items set forth in (i), (ii) or (iii) (collectively, the "Collateral"). Security Agreement, §1.

35.     The security interest under the Security Agreement cannot be extinguished until the Secured Obligations have been paid and performed in full (which has not occurred), and the delivery of "a proper instrument" from Dragon Jade acknowledging that the obligation were satisfied. Security Agreement, §2.

12

36.     Under the Security Agreement, Dragon Jade has various rights including the right to have a receiver appointed and to foreclose on the Collateral that is the subject of the Agreement.   Although Dragon Jade does not believe that the Ultroid Entities have successfully terminated the Option Agreement, to the extent that they did, then Dragon Jade was entitled to return of the indebtedness owed, which did not occur.   As a result, under those circumstances, Dragon Jade would be entitled to foreclose under the terms of the Security Agreement as well its rights under the Option Agreement.

37.     Section 9 of the Security Agreement provides that Dragon Jade is entitled to recoup "any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by Secured Party [Dragon Jade] in protecting, preserving or enforcing Secured Party's rights and remedies under or in respect of any of the Secured Obligations or any of the Collateral." Security Agreement, §9.

38.     As is the case with the Option Agreement, the Security Agreement is governed by Florida law.  Security Agreement, §11.

39.     At the time of this filing, Dragon Jade does not have specific information that the Ultroid Entities has already violated the Security Agreement by transferring, selling or otherwise pledging any of the Collateral, but based upon the statements made to Dragon Jade, it has reason to believe that if that has not already occurred, it is anticipated to occur in the near term.

40.     On information and belief, Ultroid Marketing has undergone a change of control by issuing additional equity to Michael J. Goeree of Tampa, Florida and Cedric E. Lewis of Sharon, Pennsylvania, amounting in aggregate to 53% of the outstanding equity in

13

Ultroid Marketing  Messrs. Goeree and Lewis have resisted all efforts of Dragon Jade to communicate with them and are believed to be in the process of attempting to transfer the Ultroid Assets to a third party in contravention of the Defendants' obligations under the Agreements.

41.      All conditions precedent have been met, were performed or were otherwise waived.

42.      Dragon Jade has been forced to retain the undersigned counsel to pursue the claims brought herein and is obligated to pay reasonable attorneys' fees and costs associated with doing so.

**CLAIMS FOR RELIEF**

**COUNT I**

**Breach of the Option Agreement
(Against All Defendants)**

43.      Plaintiff incorporates paragraphs 1 through 42 as though fully set forth herein.

44.      As more fully detailed above, Dragon Jade and the Ultroid Entities entered into the Option Agreement, which granted Dragon Jade the exclusive option to purchase the assets as detailed therein during the Option Period (as defined in the Option Agreement), which extends through 30 days after the completion of Milestone 2. *See* Exhibit C to the Option Agreement.

45.      There is no set completion date for Milestone 2, which ends when Phase 3 is complete, but, rather the agreement provides only that payments must be made by Dragon Jade on February 27, March 6 and March 13, respectively.  There is no date for the completion of the Phase 3 items in the Option Agreement, however.

14

46.     Notwithstanding the plain language of the Option Agreement, the Ultroid Entities sent the September 22, 2017 claiming that the Option Period expired 30 days after "Phase 2". This assertion is contrary to the plain language of the parties' agreement.

47.     By the September 22, 2017 letter, the Ultroid Entities illegally and improperly purport to terminate the exclusive option rights of Dragon Jade in breach of the Option Agreement.

48.     Further, the Ultroid Entities have also breached the Option Agreement by advising Dragon Jade that they are attempting to sell the assets that are secured by the Option Agreement and to which the Ultroid Entities provided Dragon Jade a security interest in. Option Agreement, §4.1.

49.     Dragon Jade advised the Ultroid Entities of their breach and anticipated breach of the Option Agreement, but the Ultroid Entities have refused to curtail their illegal actions or otherwise provide assurances that the security interest in the protected assets is not being violated.

50.     Rather, Ultroid Entities have simply reiterated their wrongful claim that they have terminated the Option Agreement.

51.     The breaches of the Option Agreement by the Ultroid Entities have and will continue to cause damage to Dragon Jade. Under the Option Agreement, in addition to its other rights and remedies, Dragon Jade is entitled to Liquidated Damages of $2,000,000. Option Agreement, §2.8.

WHEREFORE, based upon the foregoing, Dragon Jade demands judgment against the Ultroid Entities and for an award of compensatory and Liquidated Damages (as defined

15

in the Option Agreement), injunctive relief, prejudgment and post judgment interest and grant such other relief as is appropriate

## COUNT II

### Anticipated Breach of the Option Agreement
### (Against All Defendants)

52.     Plaintiff incorporates paragraphs 1 through 42 as though fully set forth herein.

53.     As more fully detailed above, Dragon Jade and the Ultroid Entities entered into the Option Agreement, which granted Dragon Jade the exclusive option to purchase the assets as detailed therein during the Option Period (as defined in the Option Agreement), which extends through 30 days after the completion of Milestone 2. *See* Exhibit C to the Option Agreement.

54.     There is no set completion date for Milestone 2, which ends when Phase 3 is complete, but, rather the agreement provides only that payments must be made by Dragon Jade on February 27, March 6 and March 13, respectively.  There is no date for the completion of the Phase 3 items in the Option Agreement, however.

55.     Notwithstanding the plain language of the Option Agreement, the Ultroid Entities sent the September 22, 2017 claiming that the Option Period expired 30 days after "Phase 2" (which was slated to conclude on February 15th under the Option Agreement). This assertion is contrary to the plain language of the parties' agreement.

56.     By the September 22, 2017 letter, the Ultroid Entities illegally and improperly purport to terminate the exclusive option rights of Dragon Jade in breach of the Option Agreement.

16

57.     Further, on information and belief, the Ultroid Entities have also breached the Option Agreement by attempting to sell the assets that are secured by the Option Agreement and to which the Ultroid Entities provided Dragon Jade a security interest in.  Option Agreement, §4.1.

58.     Dragon Jade advised the Ultroid Entities of their breach and anticipated breach of the Option Agreement, but the Ultroid Entities have refused to curtail their illegal actions or otherwise provide assurances that the security interest in the protected assets is not being violated.

59.     Rather, Ultroid Entities have simply reiterated their wrongful claim that they have terminated the Option Agreement.

60.     The breaches of the Option Agreement by the Ultroid Entities have and will continue to cause damage to Dragon Jade.  Under the Option Agreement, in addition to its other rights and remedies, Dragon Jade is entitled to Liquidated Damages of $2,000,000. Option Agreement, §2.8.

WHEREFORE, based upon the foregoing, Dragon Jade demands judgment against the Ultroid Entities and for an award of compensatory and Liquidated Damages (as defined in the Option Agreement), injunctive relief, prejudgment and post judgment interest and grant such other relief as is appropriate.

## COUNT III

### Breach of the Security Agreement
### (Against All Defendants)

61.     Plaintiff incorporates paragraphs 1 through 42 as though fully set forth herein.

17

62.     As more fully detailed above, Dragon Jade and the Ultroid Entities entered into the Security Agreement, which granted Dragon Jade a security interest and first priority lien against the assets of the Ultroid Entities.

63.     To the extent that the Ultroid Entities legally terminated the Option Agreement, then they failed to repay the indebtedness owed. Thus, the obligations secured by the Security Agreement have not been satisfied by the Ultroid Entities, nor has the Dragon Jade issued to the Ultroid Entities any instrument acknowledging satisfaction of any of the indebtedness owed to Dragon Jade.

64.     The Security Agreement requires the Ultroid Entities to maintain the collateral and security, among other things, "free and clear of all liens, claims and encumbrances, including purchase money security interests, other than those in favor of or otherwise approved by [Dragon Jade]. Security Agreement, §3.

65.     On information and belief, the Ultroid Entities do not intend to adhere to the terms of the Security Agreement and that they are currently engaged in conversations to sell the assets that are the subject of the Security Agreement.

66.     The Ultroid Entities actions are in breach of the Security Agreement and Dragon Jade's rights including its right of possession of a first priority lien over the assets of the Ultroid Entities as defined in the Security Agreement.

67.     Dragon Jade has advised the Ultroid Entities that is conduct is in breach of the Security Agreement and has sought assurances from the Ultroid Entities that they will not sell or otherwise encumber the security pledged in the Security Agreement, but the Ultroid have and continue to refuse to honor their contractual obligations.

18

WHEREFORE, based upon the foregoing, Dragon Jade demands judgment against the Ultroid Entities and for an award of compensatory damages, to enforce its rights under the Security Agreement including to marshal the assets as identified in the Security Agreement, injunctive relief, prejudgment and post judgment interest and grant such other relief as is appropriate.

**COUNT IV**

**Anticipated Breach of the Security Agreement**
**(Against All Defendants)**

68.     Plaintiff incorporates paragraphs 1 through 42 as though fully set forth herein.

69.     As more fully detailed above, Dragon Jade and the Ultroid Entities entered into the Security Agreement, which granted Dragon Jade a security interest and first priority lien against the assets of the Ultroid Entities.

70.     To the extent that the Ultroid Entities legally terminated the Option Agreement, then they failed to repay the indebtedness owed. Thus, the obligations secured by the Security Agreement have not been satisfied by the Ultroid Entities, nor has the Dragon Jade issued to the Ultroid Entities any instrument acknowledging satisfaction of any of the indebtedness owed to Dragon Jade.

71.     The Security Agreement requires the Ultroid Entities to maintain the collateral and security, among other things, "free and clear of all liens, claims and encumbrances, including purchase money security interests, other than those in favor of or otherwise approved by [Dragon Jade]. Security Agreement, §3.

19

4814-0902-1777.v2

72.     On information and belief, the Ultroid Entities do not intend to adhere to the terms of the Security Agreement and that they are currently engaged in conversations to sell the assets that are the subject of the Security Agreement.

73.     The Ultroid Entities actions are in breach of the Security Agreement and Dragon Jade's rights including its right of possession of a first priority lien over the assets of the Ultroid Entities as defined in the Security Agreement.

74.     Dragon Jade has advised the Ultroid Entities that is conduct is in breach of the Security Agreement and has sought assurances from the Ultroid Entities that they will not sell or otherwise encumber the security pledged in the Security Agreement, but the Ultroid have and continue to refuse to honor their contractual obligations.

WHEREFORE, based upon the foregoing, Dragon Jade demands judgment against the Ultroid Entities and for an award of compensatory damages, to enforce its rights under the Security Agreement including to marshal the assets as identified in the Security Agreement, injunctive relief, prejudgment and post judgment interest and grant such other relief as is appropriate.

## COUNT V

### Foreclose of Security Interests under Florida UCC
### (Against All Defendants)

75.     Plaintiff incorporates paragraphs 1 through 42 as though fully set forth herein.

76.     This action is brought pursuant to the Florida UCC, Chapter 671-680. Florida adopted the provisions of the Uniform Commercial Code on January 1, 1967.

4814-0902-1777.v2

77.     Under the Florida UCC, in addition to any remedies available under the Security Agreement, Dragon Jade has the right to those statutory remedies available under the Florida UCC.

78.     Pursuant to the Option Agreement and the Security Agreement, the Ultroid Entities granted to Dragon Jade a security interest and first priority lien in "all right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising acquired: (i) all Ultroid Assets and any and all claims, rights and interests in any of the Ultroid Assets; (ii) all guaranties and security for any items set forth in (i); (iii) all substitutions and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties) of, any and all of the items set forth in (i) and (ii); and (iv) all of Ultroid's books relating to any and all of the items set forth in (i), (ii) or (iii) (collectively, the "Collateral"). Security Agreement, §1.

79.     These were perfected by Dragon Jade, who filed UCC Financing Statements with the State of Florida consistent with its right to do so under the Security Agreement. *See* Exhibit C hereto.  These instruments were filed and recorded on January 30, 2017 (201700140041, 2017004005X and 201700140033).

80.     To the extent that the Ultroid Entities legally terminated the Option Agreement, then they failed to repay the indebtedness owed.  The Ultroid entities have not repaid or otherwise satisfied the indebtedness that is the subject of the Option Agreement, the Security Agreement or the UCC Financing Statements.

81.     The Ultroid Entities are in default of their obligations under the Agreements.

82.     Dragon Jade is entitled to enforce its rights under the Security Agreement and the UCC Financing Statements attached hereto as Exhibits B and C, respectively.    Further, Dragon Jade has statutory rights under the Florida UCC including the right collect on collateral, the right to repossess collateral, the right to sell or dispose of collateral and the retain to collateral in full or partial satisfaction of the indebtedness owed.

WHEREFORE, based upon the foregoing, Dragon Jade demands that it be entitled to foreclose and otherwise enforce its claim and right to the security identified in the Security Agreement and the UCC Financing Statements  judgment against the Ultroid Entities and for an award of compensatory damages, to enforce its rights under the Security Agreement including to marshal the assets as identified in the Security Agreement, injunctive relief, prejudgment and post judgment interest and grant such other relief as is appropriate.

4814-0902-1777.v2

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury of all issues and claims triable as a right by a jury.

Dated:  October 13, 2017

Respectfully submitted,

Jennifer G. Altman
Florida Bar No. 881384
Markenzy Lapointe
Florida Bar No. 172601
PILLSBURY WINTHROP SHAW PITTMAN, LLP
600 Brickell Avenue Suite 3100
Miami, FL 33131
Telephone: 786-913-4900
Facsimile:  786-913-4901
jennifer.altman@pillsburylaw.com
markenzy.lapointe@pillsburylaw.com

*Counsel for Plaintiff*

23