# EXHIBIT B

# SECURITY AGREEMENT

THIS SECURITY AGREEMENT (as it may be amended, restated, supplemented, extended or renewed from time to time, this "**Agreement**") is made as of January 20, 2017, by Ultroid, LLC, a Nevada limited liability company, Ultroid Marketing Development Corporation, a Florida corporation, and Ultroid Technologies, Inc., a Florida corporation (collectively "**Ultroid**"), to and for the benefit of Dragon Jade International Ltd., a British Virgin Islands limited company ("**Secured Party**"). Capitalized terms used in this Agreement and not defined in this Agreement have the meanings given to such terms in the Option Agreement (as defined below).

## RECITALS

**WHEREAS**, pursuant to that certain Exclusive Option and Remediation Agreement (as the same may be amended, restated, supplemented, extended or renewed from time to time, the "**Option Agreement**") dated on or about the date hereof by and between Secured Party and Ultroid, Secured Party has agreed, among other things, to cause to be performed certain remediation tasks and Ultroid has agreed to reimburse Secured Party for payments made with respect to such remediation tasks; and

**WHEREAS**, as security for (i) Ultroid's payment of the Remediation Amount when due, (ii) the Outstanding Debt, (iii) reimbursement for the amounts paid by Secured Party on behalf of Ultroid for insurance premiums, and (iv) any and all obligations and liabilities incurred as Liquidated Damages under the Option Agreement (collectively, the "**Secured Obligations**"), Secured Party has required that Ultroid execute and deliver this Agreement to Secured Party granting Secured Party a first priority lien on the Collateral (as defined herein below).

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual promises hereinafter set forth, the parties hereto agree as follows:

## AGREEMENT

1. Grant of Security Interest; the Collateral. Ultroid hereby pledges and grants to Secured Party, and hereby creates a continuing first priority lien and security interest in favor of Secured Party in and to all of its right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising or acquired: (i) all Ultroid Assets and any and all claims, rights and interests in any of the Ultroid Assets; (ii) all guaranties and security for any items set forth in (i); (iii) all substitutions and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties) of, any and all of the items set forth in (i) and (ii); and (iv) all of Ultroid's books relating to any and all of the items set forth in (i), (ii) or (iii) (collectively, the "**Collateral**").

2. Obligations Secured; When Security Interest Is To Be Released. This security interest is given solely to secure the Secured Obligations. On the date on which all Secured Obligations have been paid and performed in full, Secured Party will, at the request and sole

expense of Ultroid, execute and deliver to Ultroid a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement.

3. Use; Ownership. Ultroid will (i) keep all of the tangible Collateral at Ultroid's principal place of business or otherwise at locations identified to Secured Party; (ii) use the Collateral only in its trade or business; (iii) maintain all of the tangible Collateral in good operating order and repair, normal wear and tear excepted; (iv) use and maintain the Collateral only in compliance with manufacturers' recommendations and all applicable laws rules and regulations; (v) keep all of the Collateral free and clear of any and all liens, claims and encumbrances, including purchase money security interests, other than those in favor of or otherwise approved by Secured Party; and (vi) remain the sole owner of the Collateral and not sell, lease, mortgage, hypothecate, license, grant a security interest in or otherwise transfer or encumber any of the Collateral.

4. Financing Statements and Further Assurances. Ultroid agrees, on request of Secured Party, to furnish to Secured Party such further information, to execute and deliver to Secured Party such documents and instruments (including UCC financing statements) and to do such other acts and things as Secured Party may at any time reasonably request relating to the perfection or protection of the security interest in the Collateral created by this Agreement or for the purpose of carrying out the intent of this Agreement. Without limiting the foregoing, Ultroid shall cooperate and do all acts deemed necessary or advisable by Secured Party to continue in Secured Party a perfected security interest in the Collateral and shall obtain and furnish to Secured Party any subordinations, releases, landlord, lender, bailee or mortgagee waivers, control agreements, and similar documents as may be from time to time requested by, and in form and substance satisfactory to, Secured Party. Ultroid will warrant and defend the Collateral and Secured Party against all claims by all persons in connection with the Secured Obligations. For purposes of this agreement, "UCC" means the Uniform Commercial Code as in effect from time to time in the State of Florida, or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

5. Secured Party's Authority. Ultroid authorizes Secured Party to file financing statements, continuations, and amendments thereto describing the Collateral and containing any other information required by the applicable UCC, in such form and substance as Secured Party, in its sole discretion, may determine. Ultroid irrevocably grants to Secured Party the power to sign Ultroid's name and generally to act on behalf of Ultroid to execute and file applications for title, transfers of title, financing statements, notices of lien, demands for terminations or other security interests in any of the Collateral and other documents pertaining to any or all of the Collateral, subject to the terms and conditions herein. This power is coupled with Secured Party's interest in the Collateral and is irrevocable during such time as any of the Secured Obligations are outstanding. Ultroid shall, if any certificate of title shall be required or permitted by law for any of the Collateral, obtain and promptly deliver to Secured Party such certificate showing the lien of this Agreement with respect to the Collateral.

6. Certain Rights and Remedies. If Ultroid fails to pay any Secured Obligation when due (such failure, an **"Event of Default"**), and such Event of Default is continuing, Secured Party, without any other notice to or demand upon Ultroid, shall have in any jurisdiction

in which enforcement of this Agreement is sought, in addition to all other rights and remedies, the rights and remedies of a secured party under the UCC and any additional rights and remedies that may be provided to a secured party in any jurisdiction in which any of the Collateral is located, including the right to take possession of the Collateral. Secured Party may in its discretion require Ultroid to assemble all or any part of the Collateral at such location or locations as Secured Party may reasonably designate. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party shall give to Ultroid at least 10 calendar days prior written notice of the time and place of any public sale of Collateral or of the time after which any private sale or any other intended disposition is to be made. Ultroid acknowledges that 10 calendar days prior written notice of such sale or sales shall be reasonable notice. In addition, Ultroid waives any and all rights that it may have to a judicial hearing in advance of the enforcement of any of Secured Party's rights and remedies hereunder, including, without limitation, its right following an Event of Default to take immediate possession of the Collateral and to exercise its rights and remedies with respect thereto.

7. Receivers. If an Event of Default shall have occurred and be continuing and in addition to any other rights and remedies, as a matter of right and without notice to Ultroid or anyone claiming under Ultroid, and without regard to the then value of the Collateral or the interest of Ultroid therein, Secured Party may seek the appointment of a receiver for the Collateral and, to the maximum extent permitted by law, all other assets of Ultroid, all upon ex parte application to any court of the competent jurisdiction. Ultroid waives any right to a hearing or notice of hearing prior to the appointment of a receiver and irrevocably consents to such appointment. Such receiver shall have all of the usual powers and duties of receivers in like or similar cases and all of the powers and duties of Secured Party in case of entry as provided above and shall continue as such and exercise all such powers until the later of the date of confirmation of sale of the Collateral or the date of expiration of any redemption period, unless such receivership is sooner terminated. All expenses incurred by the receiver or its agents, including obligations to repay funds borrowed by the receiver, shall constitute a part of the Secured Obligations. Any revenues collected by the receiver shall be applied first to the expenses of the receivership, including reasonable attorneys' fees incurred by the receiver and Secured Party, together with interest thereon from the date incurred until paid, and the balance shall be applied toward the Secured Obligations or in such other manner as the court may direct.

8. Marshaling. Secured Party shall not be required to marshal any present or future collateral security (including but not limited to the Collateral) for, or other assurances of payment of, the Secured Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights and remedies hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights and remedies, however existing or arising. To the extent that it lawfully may, Ultroid agrees that it will not invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of Secured Party's rights and remedies under this Agreement or under the Option Agreement, and, to the extent that it lawfully may, Ultroid irrevocably waives the benefits of all such laws.

9. Proceeds of Dispositions; Expenses. Ultroid shall pay to Secured Party on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred

or paid by Secured Party in protecting, preserving or enforcing Secured Party's rights and remedies under or in respect of any of the Secured Obligations or any of the Collateral. After deducting all of the foregoing expenses, the residue of any proceeds of collection or sale or other disposition of the Collateral shall, to the extent actually received in cash, be applied to the payment of the Secured Obligations in such order or preference as Secured Party may determine. Upon the final payment and satisfaction in full of all of the Secured Obligations and after making any payments required by Sections 9-608(a)(1)(C) or 9-615(a)(3) of the UCC, any excess shall be returned to Ultroid. In the absence of final payment and satisfaction in full of all of the Secured Obligations, Ultroid shall remain liable for any deficiency.

10. Relation to Other Security Documents. The provisions of this Agreement supplement the provisions of any real estate mortgage, deed of trust or security interests now or hereafter granted by Ultroid to Secured Party which secures the payment or performance of any of the Secured Obligations. Nothing contained in any such real estate mortgage, deed of trust or other security instrument shall derogate from any of the rights or remedies of Secured Party hereunder.

11. Choice of Law. This Agreement shall be governed by and construed in accordance with Florida law, without regard to its principles of conflicts of law, except as otherwise provided in this Agreement or the UCC.

12. Binding Effect. This Agreement shall be binding upon and inure to the benefit of Ultroid and Secured Party and their respective successors and permitted assigns, including any United States trustee or any trustee appointed from a private panel.

IN WITNESS WHEREOF, the parties have executed this Security Agreement as of the date first written above.

**ULTROID:**

**ULTROID, LLC**

By: ______________________
Name: Michael Knox
Title: Manager

**ULTROID MARKETING DEVELOPMENT CORPORATION**

By: ______________________
Name: Michael Knox
Title: Sect.

ULTROID MARKETING DEVELOPMENT CORP. CORPORATE SEAL 2012 FLORIDA

**ULTROID TECHNOLOGIES, INC.**

By: ______________________
Name: Michael Knox
Title: Sect.

ULTROID TECHNOLOGIES, INC. CORPORATE SEAL 2005 FLORIDA