UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DRAGON JADE INTERNATIONAL,
LTD.,

          Plaintiff,

v.                                              Case No. 8:17-cv-2422-T-27TBM

ULTROID, LLC, ULTROID MARKETING
DEVELOPMENT CORP., and ULTROID
TECHNOLOGIES, INC.,

          Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on referral for a Report and Recommendation on **Defendants' Motion to Dismiss** (Doc. 11).  Plaintiff filed a response in opposition (Doc. 17), to which Defendants were permitted a reply (Doc. 28).

## I.

## A.

Plaintiff Dragon Jade International, Ltd. ("Dragon Jade") initiated this action on October 13, 2017, filing a five-count complaint against Defendants Ultroid, LLC, Ultroid Marketing Development Corp., and Ultroid Technologies, Inc. (collectively, "the Ultroid Defendants"). (Doc. 1).  According to the Complaint, Dragon Jade and Ultroid Technologies initially entered into an International Distribution Agreement in June 2015 in connection with Ultroid's Hemorrhoid Management System.  Following the breakdown of that distribution agreement,

Dragon Jade began arbitration proceedings.  In addition, the U.S. Food and Drug Administration issued a warning letter to Defendants regarding its product.

Apparently in an effort to resolve arbitration and to assist Defendants with remediation of the product, the parties entered into two agreements in January 2017: the Exclusive Option and Remediation Agreement (the "Option Agreement") and the Security Agreement (the "Security Agreement").  Pursuant to the Security Agreement, Dragon Jade also filed several UCC Financing Statements against assets of the Defendants.  The Option Agreement, the Security Agreement, and the UCC Financing Statements are the subject of this action.

Dragon Jade alleges that the Option Agreement (*see* Doc. 1-1) grants to it an exclusive option to purchase the Ultroid Assets provided that Dragon Jade supplied remediation funding and certain remediation tasks were performed.  It asserts that, as defined in the Option Agreement, the Option Period expires thirty days after the completion of "Milestone 2" (as defined in the Option Agreement at Exhibit C).  Because Milestone 2 performance is not yet complete (e.g., the Design History File is not complete and the Design Master Record has not been populated), it claims that the Option Period is not yet triggered.  Notwithstanding that the Option Period has not yet run and that Dragon Jade has continued to honor its contractual obligations, it alleges that on September 22, 2017, the Ultroid Defendants sent a letter to Dragon Jade indicating that they were terminating the exclusive option effective immediately (*see* Doc. 1-4).  Dragon Jade asserts that this letter is contrary to the plain language of the Option Agreement and constitutes a breach, and/or anticipatory breach, of the Agreement.  In addition, Dragon Jade alleges that the Ultroid Defendants have made clear that they have no intention of honoring the Option Agreement and, it believes, the Ultroid Defendants are attempting to sell or otherwise encumber or hypothecate the assets subject to the parties' agreements.

In order to secure the remediation payments, outstanding debts owed, and the liquidated damages provided for in the Option Agreement, Dragon Jade and the Ultroid Defendants also entered into a Security Agreement (*see* Doc. 1-2). Through the Security Agreement, the Ultroid Defendants pledged and granted a security interest, including a first priority lien, in:

> all right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising acquired: (i) all Ultroid Assets and any and all claims, rights and interests in any of the Ultroid Assets; (ii) all guaranties and security for any items set forth in (i); (iii) all substitutions and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties) of, any and all of the items set forth in (i) and (ii); and (iv) all of Ultroid's books relating to any and all of the items set forth in (i), (ii) or (iii) (collectively, the "Collateral").

(Doc. 1-2 at ¶ 1).

The security interest cannot be extinguished until the Secured Obligations have been paid and performed in full (which Dragon Jade alleges has not occurred), and the delivery of "a proper instrument" from Dragon Jade acknowledging that the obligations were satisfied. *Id.* at ¶ 2. Under the Security Agreement, in the event of breach, Dragon Jade is entitled to appointment of receiver and to foreclose upon the collateral. Dragon Jade alleges that "Although Dragon Jade does not believe that the Ultroid Entities have successfully terminated the Option Agreement, to the extent that they did, then Dragon Jade was entitled to return of the indebtedness owed, which did occur. As a result, under those circumstances, Dragon Jade would be entitled to foreclose under the terms of the Security Agreement as well [as] its rights under the Option Agreement." (Doc. 1 at ¶ 36). In addition, in connection with the execution of the Option and Security agreements, Dragon Jade filed various UCC Financing Statements to secure the assets of the Ultroid Defendants (*see* Doc. 1-3). Again, it alleges that it believes the Ultroid Defendants are

attempting to sell the collateral that is subject to the parties' agreements. It states that all conditions precedent have been performed or have been waived. (Doc. 1 at ¶ 41).

Plaintiff sets out five counts: Breach of the Option Agreement (Count I); Anticipated Breach of the Option Agreement (Count II); Breach of the Security Agreement (Count III); Anticipated Breach of the Security Agreement (Count IV); and Foreclosure of Security Interests under Florida UCC (Count V). It seeks damages (compensatory and liquidated damages in the amount of $2 million); alternatively, foreclosure of its security interest; and declaratory and injunctive relief.[1]

### B.

The Ultroid Defendants move to dismiss all five counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Doc. 11). First, with regard to the Option Agreement, Defendants urge that the Option Period "was triggered upon delivery of the third payment under Phase 3, which as due no later than March 13, 2017." *Id.* at 3. Because Dragon Jade did not exercise its option within this period, Defendants claim the option, and thus the Option Agreement, expired long before they sent their September 22, 2017, notice of termination. Because the Option Agreement has expired, they argue as a matter of law and pursuant to the plain language of the Option Agreement, there can be no breach or anticipatory breach of the Option Agreement. Alternatively, Defendants argue that to the extent the Option Agreement has not expired, their September 22, 2017, letter does not constitute a material or anticipatory breach of the agreements. They assert that the letter does not address their obligations under the Agreement or otherwise suggest their intention to default on those obligations. Further, they claim that any alleged breach

---

[1]Plaintiff's Motion for Preliminary Injunction (Doc.12) will be addressed separately.

or anticipatory breach by virtue of an attempt to sell or transfer assets is based on nothing more than vague, conclusory, and unsupported allegations.

Next, with regard to any alleged breach of the Security Agreement, the Ultroid Defendants argue that, while the expiration of the Option Agreement triggered their obligation to repay Dragon Jade, the Security Agreement is silent as to when such payments are to be made. They argue that because time is not of the essence under the Agreement, there is not a fixed time for repayment, and, in any event, Dragon Jade has not even demanded repayment, there can be no claim for breach.  Alternatively, again Defendants argue that to the extent the Option Agreement has not expired, they do not yet have an obligation to repay Dragon Jade and the Security Agreement is not yet triggered.

With regard to Count V, Defendants argue that foreclosure of the security interest under the UCC filings is premature as there has been no finding of default.

In its response to the motion to dismiss, Dragon Jade disputes that the Option Period has expired, accusing Defendants of conflating Phase 2 and Milestone 2, which are separate and distinct in the Option Agreement.  It claims it has sufficiently pleaded its claims for breach of both agreements, to wit: "Ultroid breached the Option Agreement by attempting to terminate it without a legal basis, advising Dragon Jade that it was attempting to sell the assets secured in the Option Agreement, refusing to stop attempting to sell those assets, and refusing to provide assurances that the security interests were not being violated."  (Doc. 17 at 9).  It claims the September 22, 2017, provides an adequate basis from which to conclude there has been a breach or an anticipatory breach (i.e., repudiation) of the Option Agreement and Security Agreement.

As for its claim for foreclosure of the UCC liens, Dragon Jade argues that the Security Agreement specifically provide for such a remedy in the event that the Ultroid Defendants fail

in their repayment obligations.  Thus, it claims to the extent Defendants legally terminated the Option Agreement and have failed to repay their obligations, they are in default and it has sufficiently pleaded a claim under Florida law.

Defendants reply that Plaintiff has not sufficiently refuted its contentions that dismissal is appropriate.  In short, they argue Plaintiff is attempting to introduce argument or evidence outside the four corners of the Complaint; that a plain reading of the Option Agreement reveals such agreement expired thirty days after the final payment associated with "Phase 3" was made; thus, they argue there can be no breach of the Option Agreement.  With regard to the Security Agreement, Defendants again argue Plaintiff fails to state a claim for breach because it does not allege that it demanded repayment for the indebtedness.  Absent such a breach, Defendants assert Plaintiff cannot make a claim for foreclosure on the Security Interests.  (Doc. 28).

## II.

### A.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a motion attacking the legal sufficiency of a complaint.  In deciding such a motion, the court must accept the facts pleaded as true and construe them in a light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)*; U.S. v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While a complaint does not need detailed factual allegations to meet this standard, a plaintiff must provide the grounds of his entitlement to relief beyond labels, conclusions, and a formulaic recitation of the elements of a cause of

6

action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although the court "must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  To survive a Rule 12(b)(6) motion, the factual allegations of a complaint must do more than state a speculative right to relief on an assumption that all the allegations in the complaint are true.  *Twombly* at 555 (citations omitted).  In practice, this standard requires the complaint to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (quoting, with emphasis in the original, *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)).  The test is not whether the complainants will ultimately prevail but whether they are entitled to offer evidence in support of the claims pleaded.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## III.

Upon consideration, I conclude that Defendants' motion to dismiss is due to be denied.  Accepting the facts pleaded as true and construing them in a light favorable to Plaintiff, the allegations of the Complaint sufficiently plead breach or anticipatory breach of the Option Agreement and Security Agreement, as well as state a claim under Florida's Uniform Commercial Code.[2]

As an initial matter, though not specifically raised by Defendants, the Court notes that the Complaint asserts five separate counts sufficiently pleaded in the alternative.  Federal Rule of Civil Procedure 8(d) explicitly permits pleading in the alternative.  Fed. R. Civ. P. 8(d)(2) ("If

---

[2]Because this is a diversity action and pursuant to the agreements at issue here, Florida law governs the claims.

a party makes alternative statements, the pleading is sufficient if any one of them is sufficient");
*see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009). Thus, "[i]t is a
well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory
theories of liability." *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014)
(citations omitted).

The claims by Plaintiff here fall easily within the liberal alternative pleading requirements
allowed by Federal Rule of Civil Procedure 8. Moreover, even if there is some overlap or
duplication between Counts I and II, and between III and IV, alternative pleading is expressly
permitted and I find no prejudice to Defendant in allowing these counts to proceed forward.
While Plaintiff may not ultimately prevail on each of its five counts, at this stage of the
proceedings, the Court finds nothing impermissible in such alternative theories of liability and
recovery.

**Counts I and II - Breach, or Anticipatory Breach, of the Option Agreement**

Under Florida law, which the Court applies in this diversity case, a plaintiff must assert
the existence of the following three elements to state a claim for breach of contract: (1) the
existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.
*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life
Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008)).

"An anticipatory breach of contract occurs before the time has come when there is a
present duty to perform as the result of words or acts evincing an intention to refuse performance
in the future." *Alvarez v. Rendon*, 953 So. 2d 702, 709 (Fla. Fla. Dist. Ct. App. 2007). "Such
a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct,
unequivocal, and absolute." *Mori v. Matsushita Elec. Corp. of Am.*, 380 So. 2d 461, 463 (Fla.

Dist. Ct. App. 1980); *see also Power Fin. Credit Union v. NCUA Bd.*, 494 F. App'x 982, 987 (11th Cir. 2012) (per curiam) (unpublished) (citation omitted).  When faced with a repudiation, the non-breaching party has three options: "first, to rescind the contract altogether; second, to elect to treat the repudiation as a breach by bringing suit or by making some change in position; or, third, to await the time for performance of the contract and bring suit after that time has arrived." *Dutra v. Kaplan*, 137 So. 3d 1190, 1192 (Fla. Dist. Ct. App. 2014) (quoting *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571, 575 (Fla. Dist. Ct. App. 2006)).

Dragon Jade asserts that Defendants have breached, or anticipatorily breached, the Option Agreement by improperly purporting to terminate the exclusive option rights of Dragon Jade and are, in violation of the agreement, attempting to sell the assets subject to the Option and Security agreements.

Defendants' principal argument on this motion is that the Option Period has expired, thus there can be no breach and/or anticipatory breach.  They assert that the thirty-day Option Period was triggered "upon delivery of the third payment under Phase 3, which was due no later than March 13, 2017."  As a result, they argue the Option Period and the Option Agreement expired in mid-April.

Upon review, I cannot agree with Defendants that it is clear at this stage that the Option Agreement has expired.  I simply do not read the Agreement as Defendants do that all that was required to complete Milestone 2 and to trigger the Option Period was delivery of the third payment.  According to section 2.7 of the Option Agreement, "[t]his Agreement shall be effective as of the Effective Date and remain in effect until the latter of the expiration of the Option Period and the Negotiation Period."  (Doc. 1-1 at 4).  The Option Period is defined in section 2.2 as "[t]he period within which the Option may be exercised shall begin on the Effective Date and

9

shall expire thirty (30) days after completion of Milestone 2 (the 'Option Period')." *Id.* at 3. Milestone 2 is defined in Exhibit C to the Agreement: "Milestone 2: Phase 3 complete: Open populated Device Master Record.  Compliance with standards completed for some processes and ongoing for others.  UL compliances completed and certification delivered to Optionee." *Id.* at 11.

It is a fundamental proposition of contract law that agreements are to be construed in accordance with the intentions of the parties.  *See, e.g., Brown v. Beckwith*, 60 Fla. 310, 312, 53 So. 542, 542 (1910) ("In construing a contract the leading object is to ascertain and effectuate the intention of the parties."); *Bal Harbour Shops, Inc. v. Greenleaf & Crosby Co.*, 274 So. 2d 13, 15 (Fla. Dist. Ct. App. 1973) ("It is a cardinal rule in the construction of contracts that the intention of the parties thereto is to govern.").

"Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent."  11 Williston on Contracts § 30:6 (4th ed. 2012) (citation omitted).  If, however, "a written contract is ambiguous, its meaning is a question of fact, requiring a determination of the intent of parties in entering the contract.  The jury or other trier of fact, rather than the court as a matter of law, must interpret the contract's terms in light of the apparent purpose of the contract as a whole, the rules of contract construction, and relevant extrinsic evidence of the parties' intent and the meaning of the words that they used."  *Id.* at § 30:7.

"Courts must 'construe contracts in such a way as to give reasonable meaning to all provisions,' rather than leaving part of the contract useless."  *Publix Super Mkts., Inc. v. Wilder Corp. of Del.,* 876 So. 2d 652, 654 (Fla. Dist. Ct. App. 2004) (quoting *Hardwick Props., Inc. v. Newbern,* 711 So. 2d 35, 40 (Fla. Dist. Ct. App. 1998)).  "When interpreting a contract, a court

should ascribe terms their plain meaning and attempt to place itself as close as possible to the position occupied by the parties at the time the contract was executed, keeping in mind the goal to be accomplished by the agreement." *Conway v. Conway,* 111 So. 3d 925, 927 (Fla. Dist. Ct. App. 2013) (citing *Delissio v. Delissio,* 821 So. 2d 350, 353 (Fla. Dist. Ct. App. 2002)). And, "a court must construe a contract in a manner that accords with reason and probability; and avoid an absurd construction." *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. Dist. Ct. App. 2003).

By a fair reading of the Option Agreement, Milestone 2 encompassed more than merely Dragon Jade making three payments of $10,000. Rather, Milestone 2 or Phase 3 was closed upon the completion of "Open populated Device Master Record. Compliance with standards completed for some processes and ongoing for others. UL compliances completed and certification delivered to Optionee." By the allegations of the Complaint, Milestone 2 (or Phase 3) remains ongoing. (*See* Doc. 1 at ¶ 19). As a result, on these pleadings and in a light favorable to Plaintiff, the Option Period remains open. Furthermore, the parties' differing interpretations of their respective obligations under the Option Agreement demonstrate that this issue is not ripe for decision at the motion to dismiss stage.

As for Defendants' argument that their September 22, 2017, letter cannot provide a sufficient basis to conclude there has been any breach or anticipatory breach, once again their argument fails. The Option Agreement outlines certain remediation efforts to be undertaken and Dragon Jade's exclusive option to purchase the subject assets. In their Notice of Breach (attached to the Complaint, Doc. 1-4), the Ultroid Defendants stated:

> Exhibit C of the Agreement details the Timeline for beginning and completing each Phase or Milestone. Phase 2 was to begin Jan. 30, 2017 and be complete on or by Feb. 15, 2017. This date would commence the beginning of the Option Period. That period expired on or about March 17, 2017. That date having passed and no waiver being granted by us, this letter shall serve as Notice of

11

> Breach of our Agreement and Termination of the Option effective immediately.

(Doc. 1-4 at 2).

Defendants' assertion that this—the immediate termination of the Option—cannot constitute a material breach is specious and unpersuasive.  Upon review of the Complaint, Dragon Jade's right to exercise an option to purchase is material to their agreement and the Ultroid Defendants' efforts to terminate the Option constitutes a clear, distinct, and unequivocal repudiation of the agreement, which may be considered a breach.

While I agree with Defendants that Dragon Jade's allegations that "upon information and belief" the Ultroid Defendants are attempting to sell or transfer the assets is conclusory and unsupported, such is no cause for dismissal.  At this early stage of the proceedings, Plaintiff is not required to submit proof or verified allegations of the alleged breach.

In sum, I find Plaintiff has sufficiently alleged all three elements required to state a claim for breach of the contract, or, alternatively, anticipatory breach of contract as it relates to the Option Agreement.  Dragon Jade has pleaded the existence of a contract and attached the Option Agreement to the Complaint; has sufficiently alleged breach(es) of the contract; and alleged damages resulting from such breach(es).  Accordingly, Defendants' motion to dismiss Counts I and II should be denied.[3]

## Counts III and IV – Breach, or Anticipatory Breach, of the Security Agreement

With regard to Dragon Jade's claims for breach, or anticipatory breach, of the Security Agreement, again I find Defendants' motion must be denied.  Defendants' somewhat circuitous

---

[3]As noted above, while I do find that Counts I and II are somewhat duplicative, I find that no basis to dismiss at this stage.  Breach and anticipatory breach of contract claims require similar pleading and proof, and the determination of whether such a breach occurred is better left for summary judgment or trial.

argument hinges on two theories: first, if the Option Agreement remains in effect (as Plaintiff alleges) then the time for payment under Security Agreement has not yet arrived; and second, because the agreements do not specify a time for payment and time is not of the essence, there is no material breach for failure to pay.

As to the first argument, whether or not the Option Agreement has expired remains an open question not appropriate for resolution at this stage. If, however, the Option Agreement has expired, and as properly and alternatively alleged by Plaintiff, "To the extent that the Ultroid Entities legally terminated the Option Agreement, then they failed to repay the indebtedness owed [under the Security Agreement]." (Doc. 1 at ¶¶ 63, 70).

As Defendants correctly note, the agreements do not provide a specific date for repayment, nor do they include a specific time of the essence clause. Rather, section 4.1 of the Option Agreement provides that the parties will enter into the Security Agreement and grant a security interest in order to repay the Remediation Amount. *Id.* at 5. The Option Agreement, which is properly read in conjunction with the Security Agreement, provides in section 3.2, "Unless otherwise agreed in writing by Optionee and Ultroid, Ultroid shall be obligated to reimburse Optionee for the Remediation Amount which amount will be payable upon expiration of the later of the Option Period and the Negotiation Period." (Doc. 1-1 at 4–5). The Security Agreement in turn provides, "If Ultroid fails to pay any Secured Obligation when due ... and such [default] is continuing, [Dragon Jade], without any other notice or demand upon Ultroid shall have in any jurisdiction ... the right and remedies under the UCC and any additional rights and remedies that may be provided to a secured party ...." (Doc. 1-2 at 3–4).

To support their claim that there can be no breach at this time, Defendants cite *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (affirming

summary judgment on the district court's finding that UPS did not breach the post-closing agreement by its five-day delay in making the June 2005 payment).  However, by my reading, *Centurion* does not support dismissal at this stage.  As set forth therein, "Under Florida law, failure to make a payment on time does not constitute *per se* a material breach of contract. Rather, to constitute a material breach, the late payment must occur where time is of the essence.... Time is of the essence under Florida law when (1) the agreement explicitly so specifies; or (2) such may be determined from the subject matter of the contract; or (3) treating time as non-essential would produce a hardship; or (4) notice has been given to the defaulting party requesting performance within a reasonable time."  *Id.*

Again, given that the Complaint is to be viewed in light favorable to Plaintiff, I find such issues (which require an examination of factual matter) preclude dismissal at this time.  As such, Defendants' motion to dismiss Counts III and VI should be denied.[4]

## Count V – Foreclosure of the Security Interest

As for Defendants' argument that Plaintiff's claim for foreclosure of the UCC Security Interest is premature because there has not yet been a finding of default, such is without merit.

As recognized by Defendants, Florida's Uniform Commercial Code specifically provides for foreclosure of security interests.  Chapter 679 generally covers the perfection, priority, and foreclosure of under UCC for Secured Transactions.  Florida Statute 679.601 provides: "After default, a secured party has the rights provided in this part and, except as otherwise provided in s. 679.602, those provided by agreement of the parties.  A secured party: (a) May reduce a claim

---

[4]Again, while Counts III and VI are somewhat duplicative, I find that no basis to dismiss at this stage.

14

to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure...."  § 679.601(1), Fla. Stat.

Defendants do not cite, nor is the Court aware, of any requirement that a declaratory judgment or other prior judgment of default is necessary before instituting a claim for foreclosure of a security interest.  Rather, default appears a necessary element of the claim that must be pleaded and proven.  As set out in the Complaint, pursuant to the Security Agreement, Dragon Jade received UCC Financing Statements, which were perfected and filed with the State of Florida.  Dragon Jade alleges that Defendants are in default and it is entitled to foreclose as a result.  (*See* Doc. 1 at ¶¶ 75–82).  I find no grounds to conclude that Plaintiff's pleading is insufficient or that the claim is otherwise premature.  Defendants' motion to dismiss Count V as premature should be denied.

### IV.

Accordingly, for the reasons set forth above, I **RECOMMEND** Defendants' Motion to Dismiss (Doc. 11) be **DENIED.**

Respectfully submitted this
23rd day of January 2018.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has fourteen (14) days from this date to file written objections to the Report

and Recommendation's factual findings and legal conclusions.  A party's failure to file

written objections waives that party's right to challenge on appeal any unobjected-to factual

finding or legal conclusion the district judge adopts from the Report and Recommendation.

*See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).


Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of record