UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DRAGON JADE INTERNATIONAL,
LTD.,

   Plaintiff,

v.              Case No. 8:17-cv-2422-T-27TBM

ULTROID, LLC, ULTROID MARKETING
DEVELOPMENT CORP., and ULTROID
TECHNOLOGIES, INC.,

   Defendants.

_____/

## REPORT AND RECOMMENDATION

   THIS MATTER is before the Court following a hearing conducted January 22, 2018, on **Plaintiff's Motion for Preliminary Injunction** (Doc. 12) and Defendants' response in opposition (Doc. 12).

   For the reasons set forth below, I recommend the motion be **denied.**

## I.

## A.

   Plaintiff Dragon Jade International, Ltd. ("Dragon Jade") initiated this action on October 13, 2017, against Defendants Ultroid, LLC, Ultroid Marketing Development Corp., and Ultroid Technologies, Inc. (collectively, "the Ultroid Defendants"). (Doc. 1). As recently reported by the undersigned (*see* Doc. 34),[1] this action involves alleged breaches of two agreements: the

---

[1]On January 23, 2018, the undersigned recommended that Defendants' motion to dismiss be denied.

Exclusive Option and Remediation Agreement (the "Option Agreement") and the Security Agreement (the "Security Agreement").  (*See* Docs. 1-1, 1-2).

Plaintiff has asserted five-counts against Defendants: Breach of the Option Agreement (Count I); Anticipated Breach of the Option Agreement (Count II); Breach of the Security Agreement (Count III); Anticipated Breach of the Security Agreement (Count IV); and Foreclosure of Security Interests under Florida UCC (Count V).  It seeks damages (compensatory and liquidated damages in the amount of $2 million); alternatively, foreclosure of its security interest; and declaratory and injunctive relief.

Defendants have not yet filed an answer or affirmative defenses, but moved to dismiss the Complaint for failure to state a claim (Doc. 11).

**B.**

Dragon Jade seeks a preliminary injunction to prohibit the Ultroid Defendants "from using, pledging, hypothecating, assigning, transferring or otherwise encumbering any of the assets as more fully described in the Option Agreement."  (Doc. 12 at 21).[2]

---

[2]At hearing, Dragon Jade indicated that it was not seeking appointment of a receiver as it requested in its motion.  Accordingly, I do not address receivership herein.

In addition, although Dragon Jade argued that it is being shut out of the remediation process, it does not request preliminary injunctive relief relating to remediation.

2

In its unverified motion, Dragon Jade outlines many of the same allegations underlying its unverified Complaint.[3]  In January 2017, the parties entered into the Option Agreement (*see* Doc. 1-1) and the Security Agreement (*see* Doc. 1-2).  In brief, Dragon Jade argues that, pursuant to the Option Agreement at section 2, Dragon Jade agreed to lend funds and expertise to the remediation of Ultroid's Hemorrhoid Management System in exchange for an exclusive option to purchase certain Ultroid assets.  It argues that section 2.8 of the Option Agreement provides that there can be no adequate remedy at law for any breach of Ultroid's obligations under section 2, that any such breach may result in irreparable harm to Dragon Jade or its affiliates.  Option Agreement, § 2.8.  The Option Agreement further provides that Dragon Jade is entitled to liquidated damages in the amount of $2 million dollars in the event of breach.  *Id.*  The Option Agreement, as well the companion Security Agreement, also granted Dragon Jade a security interest and first lien in the Ultroid Assets, as defined therein.  *See id.* at §4.1; Ex. A to Option Agreement; and Security Agreement, § 1.

---

[3]As described in greater detail in the prior report, Dragon Jade and Ultroid Technologies initially entered into an International Distribution Agreement in June 2015 in connection with Ultroid's Hemorrhoid Management System.  Following the breakdown of that distribution agreement, Dragon Jade began arbitration proceedings.  In addition, the U.S. Food and Drug Administration issued a warning letter to Defendants regarding its product which was then recalled.  In an effort to resolve arbitration and to assist Defendants with remediation of the product, in January 2017 the parties entered into the Option Agreement and the Security Agreement.  Pursuant to the Security Agreement, Dragon Jade also filed several UCC Financing Statements against assets of the Defendants.  Dragon Jade alleges that the Option Agreement grants to it an exclusive option to purchase the Ultroid Assets provided that Dragon Jade supplied remediation funding and certain remediation tasks were performed.  Plaintiff alleges that Defendants have breached both agreements and it seeks injunctive relief to secure the assets which form the security for the deal.

On September 22, 2017, the Ultroid Defendants sent a letter to Dragon Jade indicating that they were terminating the exclusive option effective immediately. (Docs. 1-4; 12-1 at 91–92). Dragon Jade asserts that this letter is contrary to the plain language of the Option Agreement and constitutes a breach, and/or anticipatory breach, of the Agreement.[4] In addition, Dragon Jade alleges that the Ultroid Defendants have made clear that they have no intention of honoring the Option Agreement and, it believes, the Ultroid Defendants are attempting to sell or otherwise encumber or hypothecate the assets subject to the parties' agreements.

Dragon Jade argues that it meets all four factors necessary for the imposition of a preliminary injunction. In support, it submits two affidavits of Glenn Henricksen, a consultant to the Board of Directors of Dragon Jade (Docs. 12-1 and 29); and the affidavit of Kamill Hillberth, Chief Technology Officer of Superior Electronics, Inc. ("SEI"), a third-party vendor who had been assisting with the remediation process (Doc. 30).

The Ultroid Defendants respond that a preliminary injunction is unwarranted, as Dragon Jade has failed to carry its burden as to the four requisite elements. Defendants make similar argument as they did in their motion to dismiss that there cannot be and has not been a breach of the Option Agreement or the Security Agreement; and as a result, Dragon Jade does not have

---

[4]As addressed in the prior report, Plaintiff and Defendant disagree on the timing and requirements necessary to trigger the Option Period and whether or not Defendants have breached or repudiated either agreement.

4

a substantial likelihood of success on its claims.[5]  Further, Defendants argue that if their motion

to dismiss is denied, they intend to assert several viable affirmative defenses, including

anticipatory repudiation by Plaintiff.  Defendants submit that Plaintiff has not set forth a factual

basis to find irreparable harm; rather, they claim that any alleged injury is compensable by

monetary damages, and that Dragon Jade has failed to show that any injury is actual and

imminent.  The Ultroid Defendants argue that, compared to minimal (if any) harm that Plaintiff

would suffer if injunctive relief is not granted, Defendants would suffer substantial harm if an

injunction were entered.  They claim that, in addition to reputational harm, such would in effect

put them out of business.  Moreover, they claim that injunctive relief on these breach of contract

claims would disserve the public interest by stifling the growth and production of an American

company.  In the event the Court grants the injunction, Defendants request a security bond of $84

million (the previously appraised value of the companies and the assets) or $2 million (the

liquidated damages amount).  In support of their response, Defendants submit the affidavit of

Michael Knox, Chief Financial Officer and/or manager for the Ultroid entities (Doc. 20-1); and

---

[5]Defendants contend that the Option Agreement has expired and pursuant to the plain
language of that agreement, there can be no breach or anticipatory breach.  Alternatively,
Defendants argue that to the extent the Option Agreement has not expired, their September
22, 2017, letter does not constitute a material or anticipatory breach of the agreements.  Thus,
they claim the letter does not address their obligations under the Agreement or otherwise
suggest their intention to default on those obligations.  Further, they claim that any alleged
breach or anticipatory breach by virtue of an attempt to sell or transfer assets is based on
nothing more than vague, conclusory, and unsupported allegations.  With regard to any
alleged breach of the Security Agreement, the Ultroid Defendants argue that, while the
expiration of the Option Agreement triggered their obligation to repay Dragon Jade, the
Security Agreement is silent as to when such payments are to be made.  They argue that
because time is not of the essence under the Agreement, there is not a fixed time for
repayment, and any obligation to repay Dragon Jade and the Security Agreement is not yet
triggered.

two affidavits of Michael Goere, Chief Executive Officer for Ultroid, LLC, and Ultroid Marketing Development Corp. (Docs. 20-2 and 31).

## II.

Rule 65(a) of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. The purpose of a preliminary injunction is to maintain the *status quo* until the court can enter a final decision on the merits of the case. *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). A party seeking entry of a preliminary injunction must establish four elements:

> (1) a substantial likelihood of success on the merits;
> (2) a substantial threat of irreparable injury if the injunction is not granted;
> (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and
> (4) if issued, the injunction would not be adverse to the public interest.

*See Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quotations omitted).

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Id.* (quoting *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009)). The entry of a preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)).

Moreover, Local Rule 4.06(b)(1) provides that a party applying for a preliminary injunction must support the allegations by specific facts shown in a verified complaint or

6

accompanying affidavits.  M.D. Fla. R. 4.06(b).  "Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction."  Charles Alan Wright, et al., 11A Federal Practice and Procedure § 2949 (3d ed. 2017); *see also Palmer v. Braun*, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001) *aff'd*, 287 F.3d 1325 (11th Cir. 2002) (internal citations omitted) ("To carry its burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings. Moreover, vague or conclusory affidavits are insufficient to satisfy the plaintiff's burden"). However, in considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction.  *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

### III.

Upon review and consideration of the record presented, the motion for preliminary injunction is appropriately denied.  This determination is based principally upon Dragon Jade's failure to meet its burden of showing on the most important requirement, irreparable harm.

To be entitled to a preliminary injunction, the movant must satisfy each of the four elements outlined above; however, "[a] showing of irreparable harm is 'the *sine qua non* of injunctive relief.'"  *Siegel*, 234 F.3d at 1176 (quoting *N.E. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978)).  "Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of

irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.* at 1176.

Furthermore, "the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Id.* (quotation omitted); *see also Ruffin v. Great Dane Trailers*, 969 F.2d 989, 995 (11th Cir. 1992) (injunction is inappropriate if possibility of future harm arising from the behavior plaintiff seeks to enjoin is purely speculative); *N.E. Fla. Chapter*, 896 F.2d at 1286 (conclusory allegation of irreparable harm in verified complaint and assertion of speculative economic injury at injunction hearing were inadequate to support an injunction order).

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (quoting *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay" do not reach the actual and imminent standard. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ( "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). As measured against these standards, I must conclude Plaintiff is not entitled to injunctive relief on this motion.

Here, Dragon Jade primarily relies on the terms of the Option Agreement to support its claim for irreparable harm. It argues that the parties' agreement creates a "presumption" of irreparable harm. The Option Agreement provides:

> The parties agree that due to the unique nature of the Ultroid Assets, there can be no adequate remedy at law for any breach of Ultroid's obligations under this Section 2, that any such breach may result in irreparable harm to Optionee or its Affiliates, and therefore, that upon any such breach or any threat thereof,

8

> Optionee shall be entitled to seek appropriate equitable relief in
> addition to whatever remedies it might have at law…

(Docs. 1-1 and 12-1 at 67, § 2.8).

While Dragon Jade is correct that the Option Agreement reflects the parties' agreement quoted above, such a contract provision is not dispositive of the issue of irreparable harm, does not in and of itself create a presumption of irreparable harm, nor is it binding upon the Court.[6]

It is well settled that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Indeed, the Court has an obligation to ensure that each of the elements are met. Although the Eleventh Circuit has not explicitly weighed in on the matter, my research reveal that the consensus among the reported decisions appears that contractual provisions regarding entitlement to injunctive relief are accorded little to no weight. *See, e.g., Anago Franchising, Inc. v. CHMI. Inc.*, No. 09-60713-CIV-ALTONAG, 2009 WL 5176548, at *11 (S.D. Fla. Dec. 21, 2009) (quoting *Boston Laser, Inc. v. Qinxin Zu*, No. 3:07-CV-0791, 2007 WL 2973663, at * 12 (N.D.N.Y. Sept.21, 2007) (a contract provision allowing for an injunction "is not alone dispositive of the issue of irreparable harm, and does not insulate a plaintiff seeking a preliminary injunction from the need to prove that it will suffer imminent irreparable injury as a result of the [defendant's] conduct")); *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1358, n.10 (N.D. Ga. 2017) (same); *Baker's Aid, a Division of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) ("We also agree with the district court that the contractual language declaring money

---

[6]While I do question whether the Defendants' agreement that there can be adequate remedy at law prevents them from arguing to the contrary, I make no conclusion of same on this motion. Because I find Plaintiff has failed to satisfy its burden in the first instance, Defendants' arguments in opposition are of little consequence.

damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate"); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir. 1972) ("The provision relative to 'obtaining an injunction or other equitable relief' is merely declaratory of existing legal rights"); *First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 235 (M.D. Pa. 2001) ("It would represent an extraordinary variance from this basic principle for a court to recognize that the parties to a suit at equity have contracted around one of the fundamental elements"); *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990) ("the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate"). Dragon Jade cites no authority that a contractual provision creates a presumption of irreparable harm or compels the court to make such a finding. Thus, I find that the portions of the Option Agreement purporting to contract for irreparable injury and injunctive relief, while relevant, are not controlling.

Dragon Jade argued at hearing that, even if the Court does not find a presumption of irreparable harm, the Court may find irreparable harm because it contracted and bargained for the opportunity to bring the Ultroid product to market. It claims that money provides it no recourse if it is not afforded to opportunity to market and sell the product. However, Dragon Jade presents no competent evidence or authority that such harm is imminent or irreparable. Indeed, Dragon Jade's proffer on the matter of irreparable harm (apart from citing the contractual provision) is quite thin.

In his affidavit, Mr. Henricksen avers that in his conversation with Mr. Goeree (Defendants' new CEO) on October 17, 2017, Mr. Goeree denied that Dragon Jade had any

10

option rights in the Ultroid Product assets and that Dragon Jade "will never get the asset." (Doc. 12-1 at ¶ 40). Mr. Henricksen states, in addition to being owed significant amounts of money, Dragon Jade has "suffered other harm that cannot be ameliorated by simply the payment of money including the disposition of the assets that Dragon Jade bargained to acquire. *Id.* at ¶ 41. This conclusory statement that the harm cannot be fixed by money damages is insufficient to make a finding in Plaintiff's favor. And, while Dragon Jade's counsel argues in the motion that the assets are unique and cannot be replicated (*see* Doc. 12 at 17), it presents little evidence in support and nothing else to show the assets are at risk of being lost.[7]

By my consideration, although it may be true that Dragon Jade may lose a significant investment if the remediation and asset purchase is not completed by Defendants, such damage can be compensated monetarily and/or via foreclosure on the security over which it has a priority position. Furthermore, while Dragon Jade's expresses concern that the Ultroid Defendants may attempt to sell, encumber, or hypothecate the assets, it presents no evidence that such is imminent or actual beyond Mr. Goeree's bluster.

The Option Agreement grants a security interest as follows:

> To secure (i) the payment of the Remediation Amount when due;
> (ii) the Outstanding Debt, (iii) reimbursement for the amounts
> paid by Optionee on behalf of Ultroid for insurance premiums,
> and (iii) [sic] any and all obligations and liabilities incurred as
> Liquidated Damages, Ultroid hereby grants to Optionee a security

---

[7]*See Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, LLC*, 199 F. Supp. 2d 1271, 1291 (M.D. Fla. 2001) (finding that plaintiff would not suffer irreparable harm where the "software is not so unique that money damages are inadequate"); *but see Qantum Commc'n Corp. v. Star Broad., Inc.*, 382 F. Supp. 2d 1362, 1366 (S.D. Fla. 2005) (finding irreparable harm to plaintiff if defendants were permitted to convey the assets to a competitor with whom they had contracted for sale because the assets at issue "are unique and cannot be readily obtained in the open market").

interest in all of the following (collectively, the "Collateral"): All right, title and interest in Ultroid in and to all of the following, whether now owned or hereafter arising or acquired and wherever located: All Ultroid Assets and any and all claims, rights and interests in any of the Ultroid Assets, and all guaranties and security for any of the above, and all substitutions and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties) of, any and all of the above, and all of Ultroid's books relating to any and all of the above. Ultroid agrees to execute a security agreement concurrently with the execution of this Agreement to be filed with the appropriate governmental office in the State of Florida and with the United States Patent and Trademark Office.

(Doc. 12-1 at 68, §4.1).[8]

Thus, as evidenced by the Option and Security Agreements and the accompanying UCC-1 Financing Statements, Dragon Jade has contracted for and perfected a first priority lien on the assets.  As a result, any proposed transfer, encumbrance, or hypothecation of the assets should be subject to the parties' agreements and first priority lien.  In these circumstances, loss of the assets appears unlikely, and surely not imminent.  If Plaintiff ultimately prevails on its claim for breach of the Option Agreement, the agreements provide adequate security in and protection of the assets, mitigating any assertion of irreparable harm.

On this conclusion, it is unnecessary to address the other requirements for injunctive relief.

---

[8]The assets are, as defined in the Option Agreement and referenced in the UCC Financing Statements, the following: the FDA 510(k) premarket notifications K023706, K030315 and all other marketing and regulatory authorizations granted throughout the world for the Ultroid Product, U.S. Patent No. 8131380, US Patent No. 9179966, Canada Patent No. 2597892, U.S. registered trademark No. 3526435, U.S. registered trademark No. 1485175 and all other intellectual property rights of Defendants in or related to the Ultroid Product.  (Doc. 21-1 at 72).

IV.

Accordingly, for the reasons set forth above, I recommend that Plaintiff's Motion for

Preliminary Injunction (Doc. 12) be **DENIED.**[9]

> Respectfully submitted this
> 30th day of January 2018.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and

Recommendation's factual findings and legal conclusions.  A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir.

R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
The Honorable James D. Whittemore, United States District Judge
Counsel of record

---

[9]Nothing would appear to bar Plaintiff revisiting such relief if a change in
circumstance warrants.  Nor is it barred from seeking permanent injunctive relief should it
ultimately prevail on the merits of its claims.

13