# EXHIBIT 2

# Ultroid Technologies, Inc. 8/27/15

 Department of Health and Human Services

Public Health Service
Food and Drug Administration
Florida District
555 Winderley Place, Suite 200
Maitland, Florida 32751
Telephone: 407-475-4700
Fax: 407-475-4770

**VIA UPS NEXT DAY AIR**
**w/ DELIVERY CONFIRMATION**

**WARNING LETTER**
**FLA-15-30**
8/27/2015

Michael A. Knox
Chief Executive Officer
Ultroid Technologies, Inc.
3140 West Kennedy Blvd., Suite 103
Tampa, FL 33609-3075 U.S.A.

Dear Mr. Knox:

During an inspection of your firm located in Tampa, Florida on April 6, 2015 through April 15, 2015, an investigator from the United States Food and Drug Administration (FDA) determined that your firm manufactures the Ultroid Hemorrhoid Management System, including the Procedure Kit accessory. Under section 201(h) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 321(h), these products are devices because they are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or is intended to affect the structure or function of the body.

This inspection revealed that these devices are adulterated within the meaning of section 501(h) of the Act, 21 U.S.C. § 351(h), in that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with the current good manufacturing practice requirements of the Quality System regulation found at Title 21, Code of Federal Regulations (CFR), Part 820.

The violations include, but are not limited to, the following:

1) Failure to establish and maintain adequate procedures to analyze processes, work operations, concessions, quality audit reports, quality records, service records, complaints, returned product, and other sources of quality data to identify existing and potential causes of nonconforming product or other quality problems and to employ appropriate statistical methodology where necessary to detect recurring quality problems, as required by 21 CFR 820.100(a)(l). For example:

a) Your firm's Corrective Action procedure, P-852C, Rev C, does not include a provision to analyze all possible sources of quality data to identify existing and potential causes of nonconforming product or other quality problems and to employ appropriate statistical methodology where necessary to detect recurring quality problems.

b) Your firm has not documented its analysis, employing appropriate statistical methodology, of quality data sources including product complaints and CAPA records that indicate nonconforming Ultroid Hemorrhoid Management Systems and Procedure Kits, such as:

    i) Complaints documented in your firm's Customer Feedback/Complaint Log, F-720-005-A, Reports #1 - #13, dated February 2, 2012 through February 3, 2014, involving broken seals of the packaging of Procedure Kit probes labeled as sterile and also handles and cords associated with power-up and/or power-down nonconformances; and

    ii) Complaint documented in your firm's Customer Survey Form, F-720-001-C, dated June 2, 2011, asserting the lowest rating possible for "Quality of Product";

2) Failure to establish and maintain adequate procedures to identify the action(s) needed to correct and prevent recurrence of nonconforming product and other quality problems, as required by 21 CFR 820.100(a)(3). For example, Section 5.3 of your firm's Corrective Action procedure, P-852C, Rev. C states, "The CPAR is forwarded to the investigator who evaluates the potential impact of the problem and the actual risk to the company and/or customer. Based on the outcome of this evaluation, remedial action may be required until a thorough investigation and permanent solution is implemented." Additionally, Sections 6.1.6, 6.1.7, and 6.1.9 of your firm's Complaint Management procedure, P-821-D states, "Once the complaint is recorded, an investigation will be completed. Upon completion of the investigation a corrective action may be initiated. The complaint will be considered closed when these steps have been completed."

However, recurring complaints documented in your firm's Customer Feedback/Complaint Log, F-720-005-A, relating to breach/broken seals of sterile packaging and nonconforming handles and cords for the Ultroid Hemorrhoid Management Systems and Procedure Kits, did not fully document a determination of the action(s) needed to correct and prevent recurrence of the nonconformances, such as:

    a) Report #1 dated February 1, 2012 and Report #12 dated December 10, 2013, references broken seals of the packaging of Procedure Kit probes labeled as sterile. Your investigation under CAPA #14-009 documents a possible root cause cannot be determined and the nonconformance appears to be a random occurrence. However, your firm elected to temporarily bring the packaging process in-house and to seek a new pouch.

    b) Report #2 dated October 25, 2012, Report #5 dated February 21, 2013, Report #6 dated April 30, 2013, Report #7 dated May 9, 2013, Report #8 dated June 25, 2013, Report #9 dated July 1, 2013, Report #10 dated April 30, 2013, and Report #11 dated February 21, 2013, references handles and cords associated with powering-up and/or powering-down nonconformances. Your investigation under CAPA #14-008 documents possible user error when connecting the cable. However, not all reported complaints indicate that user error is the possible cause for the powering-up and/or powering-down nonconformances.

3) Failure to establish and maintain procedures for verifying or validating corrective and preventive actions, to ensure that such action is effective and does not adversely affect the finished device, as required by 21 CFR 820.100(a)(4). For example, CAPA records do not document the conduct of Verification/Validation of the planned action(s), to ensure the action(s) will not adversely affect the product, as required in Section 5.7 of your firm's Corrective Action procedure, P-852C, Rev. C, including:

    a) CAPA #14-009 that was opened on May 30, 2014, to address complaints (as reference in item 2a above) of breached/broken seals of the sterile packaging of the Procedure Kit probes.

b)   CAPA #14-008 that was opened on May 30, 2014, to address complaints (as reference in item 2b above) of cables that do not connect correctly, and handles that do not function properly once the cables are connected.

c)   CAPA #14-005 that was opened on March 4, 2014, to address lack of purchasing controls, including those controls for the contract manufacturer of the Ultroid Hemorrhoid Management System and Procedure Kit.

4) Failure to adequately establish procedures to ensure that all purchased or otherwise received product and services conform to specified requirements, as required by 21 CFR 820.50. For example:

a)   Your firm entered into a quality agreement with your contract manufacturer **(b)(4)** for the manufacture of the Ultroid Hemorrhoid Management System and Procedure Kit, as specified in Section 5.2.2 of your firm's Purchasing procedure, P-740G, Rev. G. However, the "Regulatory Agreement" made July 14, 2014:

   i)   Does not include provisions for sterilization processing including, but not limited to, environmental controls and monitoring for the probes manufactured, processed, and packaged as sterile in the Procedure Kits. Procedure Kits, Lot #100044 which had sterility positive (+) results for the **(b)(4)** cycle **(b)(4)** processing under Lot #100043 and reported to your firm in Lab Report #F13-2027-00, dated December 16, 2013, are currently held for sale by your firm.

   ii)  Includes a provision under Section II, Item #20 that states the contract manufacturer "...shall allow access to any and all quality records and documents, and technical dossier information requested by the Ultroid staff and/or representatives including FDA. Ultroid shall notify [the contract manufacturer] within five (5) business days prior to necessitating access to quality records, documents and technical files." The FDA investigator was at your facility on April 6, 8, 9, 13-15, 2015 and requested production records that were not provided by you or your contract manufacturer.

   iii) Includes a provision under Section II, Item #21 that states the contract manufacturer "...shall, upon any change in status of FDA registration, inform Ultroid in writing of these changes." You stated to the FDA investigator during the inspection of your firm's facility that you were unaware your contract manufacturer has not registered their establishment with FDA as a medical device manufacturer.

5) Failure to establish and maintain procedures for design change, as required by 21 CFR 820.30(i). For example, your firm implemented design changes, but has not documented verification/validation activities as required by Section 5.14 of your firm's Design and Development procedure, P-730E, Rev. E that states, "When a design change is made the project must go through verification and validation before being released." Specifically:

a)   You stated to the FDA investigator that a design change to use a new pouch for the probe component of the Procedure Kit was implemented by your firm in response to a sterility positive (+) results for the **(b)(4)** cycle **(b)(4)** processing of Lot #100043 of Procedure Kits, reported to your firm in Lab Report #F13-2027-00, dated December 16, 2013. CAPA #14-005 does not include documentation of the conduct of verification and/or validation activities. Further, there is no Design Change Form, F-730-005 or an Engineering Change Order Form, F-730-004 for the design change.

b)   On January 28, 2013, your firm approved a design change under Project #1001, to illuminate the connector on the handle and base unit, and directly wire the handle to the base unit in response complaints received by you firm. CAPA #14-008 does not include documentation of the conduct of verification and/or validation activities. In addition, Design Change Form, F-730-005A for Project #1001 does not include documentation of the conduct of verification and/or validation activities.

DGJI00010715

DGJI00010713-00003

6) Failure to establish and maintain a design history file (DHF) for each type of device to demonstrate that the design was developed in accordance with the approved design plan, as required by 21 CFR 820.30(j). For example, your firm does not have a Design History File (DHF) for the original Ultroid Hemorrhoid Management System and Procedure Kit design projects, developed on or about 2003. However, your firm's Design and Development procedure, P-730E, Rev. E, requires:

- Under Section 5.9, "Design outputs for products are documented and filed in the design history file."
- Under Section 5.11, "Verification... is documented and filed in the design history file."
- Under Section 5.12, "Results of validation activities are documented and filed in the design history file."
- Under Section 5.13, "The Design Engineer files design review documentation in the design history file."
- Under Section 5.14, "All changes to a design are documented in the design history file."
- Under Section 5.15, "The Design Engineer reviews the design history file to make sure the file complete, containing all required records."

7) Failure to establish procedures for quality audits and conduct such audits to assure that the quality system is in compliance with the established quality system requirements and to determine the effectiveness of the quality system, as required by 21 CFR 820.22. For example, you stated to the FDA investigator that your firm has not conducted internal audits at defined yearly intervals since May 2013, as prescribed in your Internal Audits procedure, P-822F, Rev. F.

8) Failure to have required records, as required by 21 CFR § 820.180. For example, your firm was unable to locate records, such as CAPA files for CAPA #0508.085 through CAPA #0508.093; however, sequentially, a record of CAPA #0508.084 (CAPA record prior to the missing records) and a record of CAPA #0508.094 (CAPA record subsequent to the missing record) are maintained on file by your firm. The request for the records was made by the FDA investigator during the inspection. The CAPA records were never received.

We received a written response from you, dated May 5, 2015, concerning the investigator's observations noted on the Form FDA 483 (FDA 483), Inspectional Observations, which was issued to your firm. Your response did not provide adequate supporting evidence that the referenced corrections and planned courses of action have been implemented.

Our inspection also revealed that the Ultroid Hemorrhoid Management System, including the Procedure Kit accessory is misbranded under Section 502(t)(2) of the Act, 21 U.S.C. § 352(t)(2), in that your firm failed or refused to furnish material or information regarding the devices that is required by or under Section 519 of the Act, 21 U.S.C. § 360i, and 21 CFR Part 803 - Medical Device Reporting. Significant deviations include, but are not limited to:

1) Failure to adequately develop, maintain and implement written MDR procedures as required by 21 CFR 803.17(a)(2). For example: After reviewing your firm's undated MDR procedure titled: "Complaint Management, P-821-D", the following issue was noted:

The information in Section 6.2, "Medical Device Reports – US FDA" of your firm's procedure, only requires reporting of serious injury events to the FDA. This section does not identify deaths or malfunctions as a type of required report. As written, the procedure does not identify all events that may be subject to reporting under 21 CFR 803.50(a).

Your firm's procedure includes references to baseline reports and annual certifications. Baseline reports and annual certifications are no longer required and we recommend that all references to a Baseline Report and Annual Certification be removed from the MDR procedure (see respectively: 73 Federal Register Notice 53686, dated September 17, 2008 and Fourth Notice, Federal Register, dated March 20, 1997: Medical Device Reporting; Annual Certification; Final rule).

The adequacy of your firm's response dated May 5, 2015, cannot be determined at this time. The response did not include a copy of the revised MDR procedure and decision tree as stated in the letter. Without the documentation, we cannot make an assessment with respect to adequacy.

The eMDR Final Rule requiring manufacturers and importers to submit electronic Medical Device Reports (eMDRs) to FDA was published on February 13, 2014. The requirements of this final rule are in effect as of August 14, 2015. If your firm is not currently submitting reports electronically, we encourage you to visit the following web link for additional information about the electronic reporting requirements:

http://www.fda.gov/ForIndustry/FDAeSubmitter/ucm107903.htm
(http://www.fda.gov/ForIndustry/FDAeSubmitter/ucm107903.htm)

If your firm wishes to discuss MDR reportability criteria or to schedule further communications, it may contact the Reportability Review Team by email at: ReportabilityReviewTeam@fda.hhs.gov (mailto:ReportabilityReviewTeam@fda.hhs.gov).

Additionally, a review of our records revealed that the Ultroid Hemorrhoid Management System is misbranded under section 502(o) of the Act, 21 U.S.C. § 352(o), in that the devices were manufactured, prepared, propagated, compounded, or processed in an establishment not duly registered under section 510, 21 U.S.C. § 360, and was not included in a list required by section 510(j), 21 U.S.C. 360(j).

Your firm should take prompt action to correct the violations addressed in this letter. Failure to promptly correct these violations may result in regulatory action being initiated by the FDA without further notice. These actions include, but are not limited to, seizure, injunction, and civil money penalties. Also, federal agencies may be advised of the issuance of Warning Letters about devices so that they may take this information into account when considering the award of contracts. Additionally, premarket approval applications for Class III devices to which the Quality System regulation violations are reasonably related will not be approved until the violations have been corrected. Requests for Certificates to Foreign Governments will not be granted until the violations related to the subject devices have been corrected.

Please notify this office in writing within fifteen business days from the date you receive this letter of the specific steps your firm has taken to correct the noted violations, as well as an explanation of how your firm plans to prevent these violations, or similar violations, from occurring again. Include documentation of the corrections and/or corrective actions (which must address systemic problems) that your firm has taken. If your firm's planned corrections and/or corrective actions will occur over time, please include a timetable for implementation of those activities. If corrections and/or corrective actions cannot be completed within fifteen business days, state the reason for the delay and the time within which these activities will be completed. Your firm's response should be comprehensive and address all violations included in this Warning Letter.

Your response should be sent to:

Salvatore N. Randazzo
Compliance Officer
555 Winderley Place, Suite 200
Maitland, Florida, 32751

Refer to theUnique CMS Identification Number 461451, when replying. If you have any questions about the content of this letter please contact: Salvatore N. Randazzo at (407) 475-4712.

Finally, you should know that this letter is not intended to be an all-inclusive list of the violations at your firm's facility. It is your firm's responsibility to ensure compliance with applicable laws and regulations administered by FDA. The specific violations noted in this letter and the Inspectional Observations, FDA 483, issued at the close of