UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DRAGON JADE INTERNATIONAL, LTD.,**

    **Plaintiff/Counter-Defendant,**

v.                                                                                    Case No: 8:17-cv-2422-T-27CPT

**ULTROID, LLC, ULTROID
MARKETING DEVELOPMENT CORP.,
and ULTROID TECHNOLOGIES, INC.,**

    **Defendants/Counter-Plaintiffs.**
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's/Counter-Defendant's Motion to Dismiss (Dkt. 127), which Defendant/Counter-Plaintiff opposes (Dkt. 128). Upon consideration, the motion is **GRANTED** *in part* and **DENIED** *in part*.

**I.    BACKGROUND**

Dragon Jade International, Ltd. brought this action alleging that Ultroid, LLC, Ultroid Marketing Development Corp., and Ultroid Technologies, Inc. (collectively, "Ultroid"), breached two agreements between the parties. *See* (Dkts. 1, 1-1, 1-2). Ultroid counterclaimed, alleging a violation of the Florida Deceptive and Unfair Trade Practices Act, violations of the federal and Florida Racketeering Influenced and Corrupt Organization Acts, fraud in the inducement, conspiracy to defraud, and breach of contract. (Dkt. 39). Dragon Jade moves to dismiss seven of the eight claims

asserted in Ultroid's Second Amended Counterclaims.[1]

## II.     STANDARD

A counterclaim should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court's scope of review on a motion to dismiss must be limited to the four corners of the complaint. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

"The complaint must contain enough facts to make a claim for relief plausible on its face." *Resnick*, 693 F.3d at 1324-25. This occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Therefore, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. In each

---

[1] Ultroid originally sought and amended its first set of counterclaims. Upon filing its Amended Counterclaims, Dragon Jade moved to dismiss those claims for various reasons. However, Ultroid's Amended Counterclaims were found to be a shotgun pleading and Ultroid was given a third opportunity to amend.

instance, this determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal citation omitted).

Although it is axiomatic that the allegations of the Second Amended Counterclaims must be accepted for purposes of Dragon Jade's motion, this is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. And all reasonable inferences must be drawn in Ultroid's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. DISCUSSION

Dragon Jade moves to dismiss seven of the eight counterclaims brought by Ultroid, contending that the Second Amended Counterclaims is a shotgun pleading, or in the alternative, that Ultroid's factual allegations are insufficient and its conclusions are not supported by factual allegations. (Dkt. 127). For the reasons set out below, I agree with the contentions as they relate to Ultroid's federal and state RICO claims, as well as Ultroid's rescission claim based on a lack of shareholder approval (Count IV).

### i. Shotgun Pleading

Dragon Jade moves to dismiss the entire Second Amended Counterclaims as an impermissible shotgun pleading. Shotgun pleadings make it "virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief." *Anderson v. Dist. Bd. Of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). If a pleading fails "to give defendants adequate notice of the claims against them and of the grounds upon which each claim rests," the pleading violates the "shotgun pleading" rule. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). *Weiland* identifies four categories of shotgun pleadings, two of

which Dragon Jade contends Ultroid's Second Amended Counterclaims fall within. *Id*. at 1321-23.

A shotgun pleading "incorporat[es] . . . preceding paragraphs where a complaint 'contains several counts, each one incorporating by reference the allegations of its predecessors . . . , leading to a situation where [all but the first count] contain irrelevant factual allegations and legal conclusions." *Id.* at 1321 (quoting *Strategic Income Fund, L.L.C. v. Spear Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)). Dragon Jade argues that Ultroid "includ[es] multiple counts that adopt all the allegations of the preceding counts." (Dkt. 127 at p. 5). But that is not the case. Counts I and VIII do not incorporate any allegations from the preceding counts, but rather incorporate the general allegations. And Counts II through VII justifiably incorporate the general allegations and specific paragraphs from its FDUTPA claim as the alleged conspiracy and fraud claims includ deceptive and unfair trade practices.

Additionally, a shotgun pleading is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. Dragon Jade argues that Ultroid "failed to refine their allegations or identify which allegations are related to and support each claim." (Dkt. 127 at p. 5). Dragon Jade's contentions are without merit. Drawing all reasonable inferences in Ultroid's favor, the allegations that pertain to each count are not so unrelated as to be considered immaterial.

In sum, the allegations in the Second Amended Counterclaims do not make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson*, 77 F.3d at 366. Within its four corners, the counterclaims place Dragon Jade on sufficient notice of the allegations against it. *Weiland*, 792 F.3d at 1325 (citing *Anderson*, 77 F.3d at 366).

4

### *ii. FDUTPA (Counterclaim I)*

In Count I, Ultroid alleges that Dragon Jade violated Fla. Stat. § 501.204, Florida's Deceptive and Unfair Trade Practice Act ("FDUTPA"). Dragon Jade argues that Ultroid's claim fails because it does not sufficiently allege actual damages.[2]

The elements of a FDUTPA claim for damages are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008). Actual damages are "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004) (citation and internal quotation marks omitted). Actual damages "do[] not include 'actual consequential' damages", *id.*, "nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 873 (Fla. 2d DCA 2006). A non-consumer FDUTPA claim may therefore survive a motion

---

[2] Ultroid argues that Dragon Jade is attempting a "second bite at the apple" since this Court previously found that Ultroid's FDUTPA, fraud in the inducement, and conspiracy to defraud claims were sufficient to survive Dragon Jade's previous motion for judgment on the pleadings. (Dkt. 128 at pp. 5-6). In that motion, Dragon Jade did not challenge Ultroid's claim for actual damages but argued that Ultroid's factual allegations did not satisfy the heightened pleading standard under Rule 9(b). See (Dkt. 45). It was determined that the factual summary from the Counterclaims plausibly supported Ultroid's FDUTPA and fraud claims and that it could not be said that Ultroid "can prove no set of facts in support of [its] claims." (Dkt. 119 at p. 3) (citations omitted). Regardless of whether Dragon Jade is attempting to renew its original arguments, in the interests of judicial economy, its arguments will be considered. *See* Fed. R. Civ. P. (12)(g) ("Failure to state a claim upon which relief can be granted, . . ., or to state a legal defense to a claim may be raised by a motion under Rule 12(c) [in a Motion for Judgment on the Pleadings]." *See also Alibris v. ADT LLC*, No. 9:14-CV-81616, 2015 WL 5084231, at *5 (S.D. Fla. Aug. 28, 2015) ("refusing to consider these arguments until Defendant files a responsive pleading directed specifically to Plaintiff's [Second Amended Complaint] and renews its 12(c) motion for judgment on the pleadings would do no more than delay the inevitable.").

to dismiss if actual, non-speculative damages are sufficiently alleged.[3] *See Economakis v. Butler & Hosch,* P.A., No. 2:13-CV-832-FTM-38DN, 2014 WL 820623, at *2 (M.D. Fla. Mar. 3, 2014).

Construed liberally, the paragraph alleging that "the Ultroid Companies have been aggrieved and damaged in that they did not end up with the remediated product that they expected to have and their shareholders have been robbed of their investment," and "not to mention the possible loss of the Ultroid Companies' Product and Assets for tens of millions of dollars below their worth," is sufficient to support actual damages. (Dkt. 126 at ¶123); *see also Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004) ("Florida courts have allowed diminished value to serve as 'actual damages' recoverable in a FDUTPA claim"). Accordingly, Ultroid's allegations sufficiently allege the elements of a FDUTPA claim.

### *iii. RICO Claims (Counterclaims II & III)*

In Counts II and III, Ultroid alleges that Dragon Jade violated both the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.* and Florida's Civil RICO statute, Fla. Stat. § 772.102. Dragon Jade argues these claims fail for several reasons. First, Dragon Jade contends that both claims should be dismissed because Ultroid does not "allege a pattern of racketeering activity sufficient to support a RICO violation." (Dkt. 127 at pp. 18-20). On this premise, Dragon Jade's contentions are correct.

To state a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege "that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity

---

[3] *Compare Scantland v. Jeffry Knight, Inc.*, No. 8:09-CV-1985-T-17TBM, 2010 WL 4117683, at *8 (M.D. Fla. Sept. 29, 2010) (denying motion to dismiss where there was "no specific information about the damages sought") *with Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937, 939 (Fla. 3d DCA 1987) (affirming final judgment where plaintiff failed to show he suffered actual damages).

that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014). And "[b]ecause Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act, the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263-64 (11th Cir. 2004) (internal citation and alteration omitted).[4]

Dragon Jade argues that Ultroid has failed to allege closed-ended or open-ended continuity, either of which is required to show a pattern of racketeering under federal RICO. (Dkt. 127 at pp. 18-19). "An essential element of any RICO claim is a 'pattern of racketeering activity.'" *Jackson*, 372 F.3d at 1264. To satisfy this requirement, a plaintiff must allege that a defendant committed multiple predicate acts in a ten-year time span, the acts were related to one another, and the acts demonstrated criminal conduct of a continuous nature. *Id.*[5] "The continuity element . . . is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Id.*

Continuity can be either closed-ended or open-ended, "referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989). "Closed-ended continuity is established by showing that related predicate acts occurred over a substantial period of time." *Id.* at 242 (quotations and citation omitted). In the Eleventh Circuit, "closed-ended continuity

---

[4] This is undisputed by the parties. See (Dkt. 127 at p. 7 n.6); (Dkt. 128 at p. 14).

[5] The Supreme Court has emphasized that a RICO plaintiff must show related predicate acts and that those acts "amount to or pose a threat of continued criminal activity." *Jones v. Childers*, 18 F.3d 899, 911 (11th Cir. 1994) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-43 (1989)). The threat of continuing criminal activity was Congress' controlling concern in enacting RICO. *Id.*

cannot be met with allegations of schemes lasting less than a year." *Jackson*, 372 F.3d at 1266. Further, "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Id.* at 1267.

Open-ended continuity can be established by showing that the predicate acts were part of the "regular way of doing business" or threaten repetition in the future. *Id.* at 1265. "In 'open-ended' cases that rely on alleging the threat of continuity, plaintiffs can meet their burden by establishing either that 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,' or that 'the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Id.* (quoting *H.J.*, 492 U.S. at 242).

Ultroid's allegations are based on a single scheme, to "illegally acquire the Ultroid Companies' Assets." (Second Amended Counterclaims, Dkt. 126 at ¶127). Closed continuity, therefore, cannot be established.[6] Indeed, the allegations related to this scheme, as well as the scheme itself, even when viewed in a light most favorable to Ultroid, are not of the nature to establish the sort of offense that RICO was designed to address. *See Jackson*, 372 F.3d at 1265. Therefore, Ultroid must satisfy the requirements of open-ended continuity. *Id.* at 1267.

Ultroid cannot establish open-ended continuity. The allegations in the Second Amended Counterclaims are insufficient. With the exception of conclusory statements, the allegations do not demonstrate a threat of repetition or that the alleged scheme is part of Dragon Jade's regular course

---

[6] *See, e.g.*, *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (combination of "single scheme, single injury, and few victims ... makes it virtually impossible for plaintiffs to state a RICO claim"); *Resolution Tr. Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993) ("Where the scheme has a limited purpose, most courts have found no continuity.").

of business. Ultroid's allegation that "Dragon Jade has engaged in similar activity in the past, and such conduct reflects a pattern and practice employed by Dragon Jade" is wholly conclusory and fails to demonstrate a threat that is continuing in nature. *See Ferrell v. Durbin*, 311 F. Appx. 253, 257 (11th Cir. 2009) ("[I]t is clear that single schemes with a specific objective and a natural ending point can almost never present a threat of continuing racketeering activity."). Accordingly, Counts II and III are dismissed.[7]

### *iv. Rescission Claims (Counterclaims IV-VI)*

In Count IV, Ultroid seeks the equitable remedy of rescission to void the Option Agreement. (Dkt. 126 at pp. 22-24). And in Counts V and VI, Ultroid seeks to rescind both the Option Agreement and the Security Agreement. (Id. at pp. 22-28).

Under Florida law, to state a cause of action for rescission, a plaintiff must allege (1) the relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission; (4) that the party seeking rescission in fact rescinded the contract and notified the other party of the rescission; (5) if benefits have been received from the contract, an offer to restore these benefits to the party who furnished them, if possible; and (6) that the moving party has no adequate remedy at law. *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. 2nd DCA 1965).

### *A. Lack of Shareholder Approval (Counterclaim IV)*

In Count IV, Ultroid seeks rescission of the Option Agreement[8], contending that it lacked

---

[7] Because Ultroid has failed to properly plead one of the requisites to state federal and Florida RICO claims, Dragon Jade's other contentions are not addressed.

[8] Because the Option Agreement is attached to the Complaint (Dkt. 1-1) and incorporated by reference in the Second Amended Counterclaims (Dkt. 126 at ¶32), it may be considered on a motion to dismiss. *See Grossman*, 225 F.3d at 1231.

shareholder approval required to sell Dragon Jade its "Assets and Product." (Dkt. 126 at ¶¶ 156-175). Dragon Jade contends that this counterclaim should be dismissed because it is based on an inaccurate legal conclusion. Specifically, Dragon Jade argues that execution of the Option Agreement "did not require approval from [Ultroid's] shareholders; [Ultroid's] Board had the authority to authorize (and did authorize) execution of the [Option Agreement], and consequently, the [Option Agreement] is neither illegal, void, nor voidable." (Dkt. 127 at p. 20).[9]

Dragon Jade contends that execution of the Option Agreement did not require approval of Ultroid's shareholders because the agreement does not constitute "a sale of any of the Assets but rather provides Dragon Jade with an exclusive and irrevocable option to have a period to exclusively negotiate the full terms of a potential purchase of the Assets . . . ." (Id. at p. 21). Dragon Jade further argues that if an agreement was reached, the Option Agreement calls for a "separate asset purchase agreement to be drafted and executed." (Id.).

Ultroid counters that because the Option Agreement "purports to grant Dragon Jade a right to purchase all or substantially all of Ultroid's Assets," "[s]uch a transaction requires shareholder approval. (Dkt. 128 at p. 10).[10] In support, Ultroid relies on Fla. Stat. §607.1202(1) and *Schwadel v. Uchitel*, 455 So. 2d 401 (Fla. 3d DCA 1984).

---

[9] These contentions as to why Ultroid's claims should be dismissed are more properly characterized as defenses. *See Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1144, 1146 n.3 (11th Cir. 1985) ("An affirmative defense may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim, but only if the defense is apparent on the face of the complaint.").

[10] Moreover, Ultroid argues that Dragon Jade's position that the Option Agreement did not constitute a sale "is the exact opposite of Dragon Jade's longstanding position . . . that it already owns the Ultroid's assets." (Dkt. 128 at p. 9). In support of this allegation, Ultroid points to Dragon Jade's initial Answer to Counterclaims (Dkt. 41 at ¶¶ 7, 46) and Dragon Jade's Motion to Compel (Dkt. 63 at p. 10). However, these documents are outside the four corners of the Second Amended Counterclaims. *See Speaker v. U.S. Dep't of Health & Human Servs., Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (On a Rule 12(b)(6) motion to dismiss, the scope of the district court's review is generally limited to the four corners of the complaint.).

Under Florida law, Ultroid "may legally transfer any or all of its assets to whomever it chooses, so long as the proper organizational formalities are observed." *In re Barfield*, 261 B.R. 793, 798 (Bankr. M.D. Fla. 2001) (citing Fla. Stat. § 607.0302(4)). And according to Florida's statute governing a corporation's sale of assets, a corporation "may transfer all or substantially all of its assets outside of the ordinary course of business on the terms and conditions and for the consideration deemed appropriate by the corporation's board of directors, if the board of directors proposes and the shareholders approve of the transaction." *Id.* (citing Fla. Stat. § 607.1202(1)). However, this provision requiring shareholder approval is only triggered when there is a proposed sale of "all or substantially all" of a corporation's assets. *See id.* "The prerequisites of section 607.241 must be satisfied when a contemplated sale of major assets of a corporation will substantially limit the corporate business."[11] *Schwadel*, 455 So. 2d at 403.

It is not apparent that the Option Agreement constitutes a "proposed" sale of Ultroid's assets. Rather, the Agreement purports to give Dragon Jade a security interest in Ultroid's assets (Dkt. 1-1 at §4.1) and provides Dragon Jade the option to negotiate terms of a "proposed sale", i.e. the asset purchase agreement (Id. at §§2.1 & 2.4).[12] Because the Option Agreement does not constitute a proposed sale of Ultroid's assets, neither Fla. Stat. §607.1202, nor *Schwadel* applies. Accordingly, shareholder approval was not required and Dragon Jade's motion to dismiss will be granted as to Count IV.

---

[11] Fla. Stat. § 607.241, now repealed, was the shareholder notice statute "which generally provided that the conveyance of all or substantially all of the assets of a corporation required that the board of directors adopt a resolution recommending the sale and that the recommendation receive an affirmative vote of the holders of a majority of the shares entitled to vote at a shareholders' meeting." *See* SEARCHING FOR AND EXAMINING TITLE, RPTE FL-CLE 3-1.

[12] Under Florida law, a corporation has the power to "create a security interest in . . . all or any part of its property." *See* Fla. Stat. §607.0302.

### B. Fraudulent and Illegal Conduct (Counterclaim V)

In Count V, Ultroid seeks rescission of the Option and Security Agreements alleging that the agreements were executed "under duress, undue influence, extortion, coercion, bribery, fraudulent circumstances, and other illegal or deceitful conduct by Dragon Jade . . .." (Dkt. 126 at ¶ 177). Dragon Jade contends that Count V "sounds in fraud" and should be dismissed because Ultroid's factual allegations do not satisfy the heightened pleading standard under Rule 9(b). (Dkt. 127 at p. 22).

Under Rule 9(b), a plaintiff must allege fraud with particularity, that is, Ultroid must allege the precise statements, documents or representations made; the time, place and person responsible for the statements; the content and manner in which the statements misled plaintiff and what defendant gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997). However, the claim "need only provide a reasonable delineation of the underlying acts and transactions constituting the fraud." *Anderson v. Transglobe Energy Corp.*, 35 F. Supp. 2d 1363, 1370 (M.D. Fla. 1999).

Ultroid alleges several deceitful practices by Dragon Jade to obtain the execution of the Option and Security Agreements in support of its claim for rescission. See (Dkt. 126 at ¶ 177(a)-(c).[13] These practices include financial manipulation, extortion, and blackmail. (Id.).[14] In each example, Ultroid describes the conduct and identifies how the conduct influenced the execution of the agreements. Ultroid has therefore alleged its claim based of fraudulent and illegal conduct with

---

[13] Ultroid also included as a deceitful act Dragon Jade's intentional concealment that shareholder approval was not required for the agreements to be signed. However, as discussed, shareholder approval was not required.

[14] Indeed, the factual summary regarding Count V Ultroid includes in its Response at pages 10 through 13 plausibly supports the claim. See (Dkt. 128 at pp 10-13).

sufficient particularity.

### C. Fraud in the Inducement (Counterclaim VI)

In Count VI, Ultroid seeks rescission of the agreements, alleging that Dragon Jade fraudulently induced its then CEO, Michael Knox, to execute the agreements. (Dkt. 126 at pp. 25-28). Dragon Jade contends that Ultroid's factual allegations are insufficient and that its conclusions are not supported by factual allegations. (Dkt. 127 at p. 22).

The elements of a fraud in the inducement claim are: (1) a false statement of fact, (2) known by the defendant to be false when it was made, (3) made to induce reliance, (4) reliance on the false statement, and (5) resulting damages. *Noack v. Blue Cross & Blue Shield of Florida, Inc.*, 742 So. 2d 433, 434 (Fla. 1st DCA 1999); *Wynfield Inns v. Edward Le Roux Grp., Inc.*, 896 F.2d 483, 490-91 (11th Cir. 1990). And claims sounding in fraud must be plead with particularity. Fed. R. Civ. P. 9(b). "The application of the rule, however, must not abrogate the concept of notice pleading." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citations omitted).

Ultroid sufficiently pleads fraud as required by Rule 9(b) and Rule 8. Ultroid alleges that Dragon Jade made false statements and misrepresentations regarding its intentions and abilities to perform under the Option Agreement. (Dkt. 126 at ¶¶ 184, 188(a)-(d)). Further, Ultroid alleges that Dragon Jade and its representatives knew that these statements and representations were false and misleading so that Ultroid's then CEO, Knox, would execute the Option Agreement. (Id. at ¶184-189). And based on these representations, in January 2017, Knox executed the Option and Security Agreements, which "defrauded the Ultroid Companies by subjecting their Product and Assets to purchase for little to no cost relative to their appraised value." (Id. at ¶¶ 29-35, 190). The allegations in the Second Amended Counterclaims are therefore sufficient to place Dragon Jade on notice of

"the precise misconduct with which they are charged . . . ." *Durham*, 847 F.2d at 1511 (citations and quotations omitted). Accordingly, Dragon Jade's motion to dismiss Count VI is due to be denied.[15]

### v. Civil Conspiracy (Counterclaim VII)[16]

In Count VII, Ultroid alleges that Dragon Jade conspired with Knox to defraud Ultroid by "illegally divest[ing] Ultroid of its Assets." (Dkt. 128 at p. 7). Dragon Jade contends that Count VII fails to state a claim, restating its arguments relating to Counts IV and VI, that "shareholder approval was not necessary to execute the Agreements." (Dkt. 127 at p. 24). Specifically, Dragon Jade argues that Ultroid's "conclusory allegations are without merit because [Ultroid has] not plausibly alleged that Mr. Knox was acting outside the scope of his authority in executing the Agreements." (Id.).

To state a claim for civil conspiracy, Ultroid must allege "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to [the] plaintiff as a result of the acts performed pursuant to the conspiracy.' " *Olson v. Johnson*, 961 So. 2d (Fla. 2nd DCA 2007) (citing *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006)) (brackets original). "An actionable [civil] conspiracy requires an actionable underlying tort . . ." or there exists "peculiar power of coercion possessed by the conspirators by virtue of their combination." *Walters*, 931 So. 2d at 140 (citations and internal quotations omitted).

Ultroid alleges in Count VII that Knox was acting outside the scope of his authority "because he did not have authority to enter into such agreements without shareholder approval." (Dkt. 126 at ¶ 202). As discussed, shareholder approval was not required. Notwithstanding, other allegations

---

[15] To the extent Ultroid relies on its legal conclusion that shareholder approval was required for the Option Agreement to be executed (Dkt. 126 at ¶187), that argument is foreclosed since shareholder approval was not required.

[16] This counterclaim is pled in the alternative. *See* (Dkt. 126 at ¶194).

incorporated into Count VII make Ultroid's conspiracy claim plausible in that Knox was acting outside the scope of his authority, i.e., when he expressed a need for money (Id. at ¶ 73), and in turn was "ensured . . . that he would receive money after the Agreements were executed." (Id. at ¶¶ 77-80); *Iqbal*, 556 U.S. at 678. These allegations go to Knox's underlying authority to execute the agreements. Because Ultroid is alleging that he acted outside his authority to enter into the agreements, the allegations are sufficient.

V. **CONCLUSION**

Accordingly, Dragon Jade's Motion to Dismiss the Second Amended Counterclaims is **GRANTED** *in part*. Counts II, III, and IV are **DISMISSED**. Dragon Jade shall answer Ultroid's counterclaims within 14 days.

**DONE AND ORDERED** this 25th day of June, 2019.

*/s/ James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record