UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DRAGON JADE INTERNATIONAL, LTD.,   CASE NO 8:17-cv-02422-JDW-CPT

    Plaintiff/Counter-Defendant,

v.

ULTROID, LLC, *et al.*,

    Defendants/Counter-Plaintiffs.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'/COUNTER-PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DE 133]**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 3.01, Dragon Jade International, Ltd. ("Dragon Jade") opposes the motion for partial summary judgment (the "Motion") [DE 133] filed by Defendants/Counter-Plaintiffs (collectively "Ultroid") on Counts I (breach of contract) and Count II (anticipated breach of contract) of the Complaint [DE 1], and states: [1]

**I.   INTRODUCTION**

Ultroid's Motion fails in its entirety because it is based solely on the argument that Florida Statute Section 607.1202 required Ultroid's board to obtain shareholder approval before executing the parties' Exclusive Option and Remediation Agreement (the "Agreement"). But the Court rejected this argument in its recent June 25, 2019 order (the

---

[1] Ultroid also moved for summary judgment on its Counterclaim IV, but that portion of Ultroid's Motion was rendered moot by the Court's June 25, 2019 order [DE 136], which dismissed Counterclaim IV.

"Order") [DE 136], which dismissed Counterclaim IV because on its face, the Agreement is not a contract to sell Ultroid's assets.

Accordingly, and for all the reasons detailed below, the Court should deny Ultroid's Motion in its entirety.

## II. THE COURT SHOULD DENY ULTROID'S MOTION BECAUSE THE OPTION AGREEMENT WAS NOT AN AGREEMENT TO SELL ULTROID'S ASSETS

While Ultroid's Motion contains a lengthy recitation of allegedly undisputed facts, it is not necessary to address all those facts here because for purposes of Ultroid's Motion, only three facts matter:

(1) the parties executed the Agreement;

(2) Ultroid's shareholders did not vote to approve the execution of the Agreement; and

(3) the Agreement contains a Section 2.4, which states:

> 2.4 <u>Asset Purchase Agreement</u>. The major terms of the Asset Purchase Agreement are attached as Exhibit A and are hereby agreed to by both parties as the basis for the Asset Purchase Agreement. All negotiations relating to the Asset Purchase Agreement and the execution of the Asset Purchase Agreement shall be completed no later than three (3) months following the exercise of the Option, or such further period as may be agreed in writing by the parties (the "Negotiation Period"). Optionee and Ultroid shall negotiate in good faith during the Negotiation Period and shall respond promptly to all written proposals which each shall receive from the other. Further, Ultroid shall cooperate with Optionee to conduct diligence on the Ultroid Assets and shall respond promptly and fully to any requests by Optionee relating thereto. **If Optionee does not exercise the Option during the Option Period or if the parties fail to agree to terms and conditions of the Asset Purchase Agreement within the Negotiation Period, Ultroid shall have not further obligations to Optionee except as set forth herein, unless the Negotiation Period is extended by the agreement of the parties.**

(emphasis added). Based on the parties' respective motions for summary judgment, neither party disputes those three undisputed facts. And with these three facts no longer in dispute, all

303496936 v1

that remains is the legal question: was shareholder approval required before Ultroid could execute the Agreement? The answer is no.

Ultroid argues that the Agreement is void *ab initio* and invalid as matter of law, or in the alternative, that it is voidable, because shareholder approval was required under Florida Statute Section 607.1202. Ultroid Mot. for Summ. J. at 11-16. That Section, titled "Sale of assets other than in the regular course of business," requires that a corporate board obtain shareholder approval to sell all or substantially all of the company's assets. Specifically, Section 607.1202 states:

> A corporation may sell . . . all, or substantially all, of its property (with or without goodwill), otherwise than in the usual course of business, on the terms and conditions and for the consideration determined by the corporation's board of directors, if the board of directors proposes and its shareholders of record approve the proposed transaction.

In this case, the Agreement conveyed to Dragon Jade an option (the "Option"), for only a limited period, to purchase all of Ultroid's assets contingent on the successful post-Option negotiation of a separate Asset Purchase Agreement (as defined in the Agreement). Dragon Jade Mot. for Summ. J. at Ex. 15, §§ 2.1-2.4. If the parties were unable to negotiate a mutually agreeable separate Asset Purchase Agreement, Ultroid would have no further obligation to sell its assets to Dragon Jade. *Id.* at § 2.4.

The plain language of the Agreement—which is the best evidence of the parties' intent—unequivocally demonstrates that the Agreement is not an Asset Purchase Agreement.[2]

---

[2] *Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*, 898 F.3d 1087, 1093 (11th Cir. 2018) (stating "that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls," and "[w]hen general propositions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control").

The Agreement states that if Dragon Jade exercised the Option, the parties would still need to: (i) negotiate a separate Asset Purchase Agreement; (ii) exchange proposals; (iii) cooperate on asset due diligence; and (iv) agree to mutually acceptable terms and conditions within the three-month Negotiation Period (as defined in the Agreement). *Id.* at Ex. 15, §§ 2.1-2.4. If the parties could not agree to mutually acceptable terms and conditions, Ultroid would not be required to sell its assets. *Id.* at § 2.4.

In its June 25, 2019 Order [DE 136], the Court rejected Ultroid's shareholder approval argument and dismissed Ultroid's Counterclaim IV, which sought to rescind the Agreement for lack of shareholder approval. In dismissing this counterclaim, the Court held that the Agreement was not, as Ultroid contends, an agreement to sell Ultroid's assets. As the Court explained, the Agreement:

> Provides Dragon Jade the option to negotiate terms of a "proposed sale", i.e. the asset purchase agreement . . . . Because the Option Agreement does not constitute a proposed sale of Ultroid's assets, neither Fla. Stat. §607.1202, nor *Schwadel* [*v. Uchitel*, 455 So.2d 401 (Fla. 3d DCA 1984)] applies. Accordingly, shareholder approval was not required and Dragon Jade's motion to dismiss will be granted as to Count IV.

Order, at 11. Ultroid asserts no other basis in support of summary judgment in its favor on Counts I and II of the Complaint. Accordingly, the Court should deny Ultroid's Motion.

The Court should also deny Ultroid's Motion based on the law of the case doctrine, which provides another basis for the Court to deny Ultroid summary judgment on the shareholder approval issue. That doctrine "posits that when a court decides on a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618-619 (1983) (a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive); *accord*

*Murphy v. FDIC*, 208 F.3d 959, 966 (11th Cir. 2000) ("The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided"); *see Wheeler v. Pleasant Grove*, 746 F.2d 1548, 1549-50 (11th Cir. 1984) (same).

Accordingly, the Court should deny Ultroid's Motion.

### III. IF THE COURT FINDS THAT THE AGREEMENT WAS VOID OR VOIDABLE, IT SHOULD FIND THAT THE OPTION SECTION IS SEVERABLE, AND THAT THE REMAINDER OF THE AGREEMENT SURVIVES

Ultroid argues that if the Court finds that Ultroid needed shareholder approval before executing the Agreement, because the Agreement was a contract to sell all of Ultroid's assets, the purchase option aspect of the Agreement is not severable from the remainder of the Agreement. Ultroid Motion for Summ. J., at 13. While Dragon Jade disagrees with that conclusion, it does not disagree with the standard for severability set forth in the cases Ultroid relies on in its Motion. Ultroid Mot. at 13.

In those cases, courts in Florida held that contractual provisions are severable where—like here—the illegal portion of the contract does not go to its essence and with the illegal portion eliminated, valid legal obligations remain.[3] Here and as described below, the Option provisions in Section 2 of the Agreement do not go to the essence of the Agreement, and with Option provisions eliminated, legal obligations remain.

The essence of the Agreement is rooted in the remediation of the Ultroid "Device" following its recall. Ultroid Motion at 3, 6. Section 3 of the Agreement describes the parties'

---

[3] *See, e.g., In re Colony Beach & Tennis Club Ass'n*, 2010 WL 1162955, *6 (M.D. Fla. Nov. 19, 2010).

rights and obligations as to the remediation of the Ultroid Device. Those rights and obligations remain whether or not Dragon Jade exercises its Option pursuant to Section 2 of the Agreement. Indeed, neither party loses rights or obligations related to the remediation of the Device if Dragon Jade does not exercise the Option. Likewise, the Agreement does not provide for either party to lose rights or obligations related to remediation of the Ultroid Device if the parties fail to negotiate a mutually acceptable Asset Purchase Agreement pursuant to Section 2.4.

Therefore, since the successful exercise of the Option may never have come to pass, but because the parties' remediation-related rights and obligations under Section 3 would necessarily persist, the Option does not go to the essence of the Agreement. In addition, with the Option provision eliminated from the Agreement, the parties would still have valid legal obligations as to remediation of the Ultroid Device under Section 3. Thus, if the Court were to find that the Agreement was a contract to sell substantially all of Ultroid's assets without shareholder approval, the Court may and should sever the Option provisions, and should find that remainder of the Agreement is valid and enforceable.

## IV. CONCLUSION

For all the foregoing reasons, the Court should deny Ultroid's motion for partial summary judgment as to Counts I and II of Dragon Jade's Complaint.

Dated: June 27, 2019

   /s/ Elisa J. D'Amico
ELISA J. D'AMICO
Fla. Bar No. 76936
Email: elisa.damico@klgates.com
WILLIAM J. SIMONITSCH
Fla. Bar No. 0422060
Email: bill.simonitsch@klgates.com
**K&L Gates LLP**
200 South Biscayne Blvd., Ste. 3900
Miami, Florida 33131
Tel. 305 539 3300
*Trial Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **June 27, 2019** the foregoing was filed via CM-ECF and served by Notice of Electronic Filing on William Lawton, Joshua Walker, Jenna Winchester, Dean, Ringers, Morgan & Lawton, PA, PO Box 2928, Orlando, Florida, 32802.

   /s/ Elisa J. D'Amico
ELISA J. D'AMICO