UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DRAGON JADE INTERNATIONAL, LTD.,

    Plaintiff/Counter-Defendant,

v.                                                    Case No. 8:17-cv-2422-T-27CPT

ULTROID, LLC, ULTROID MARKETING
DEVELOPMENT CORP., and ULTROID
TECHNOLOGIES, INC.,

    Defendants/Counter-Plaintiffs.
_____/

**O R D E R**

This cause is before the Court on Plaintiff *Dragon Jade's Motion for Sanctions Pursuant to Fed. R. Civ. P. 37* (Doc. 148) and the response in opposition filed by Defendants Ultroid, LLC, Ultroid Marketing Development Corp., and Ultroid Technologies, Inc. (collectively, Ultroid) (Doc. 154). For the reasons discussed below, Dragon Jade's motion is granted in part and denied in part.

I.

Dragon Jade initiated this action in October 2017, asserting that Ultroid breached two agreements between the parties. (Doc. 1). As described in Dragon Jade's complaint, one of these agreements (the Option Agreement) granted Dragon Jade the option to purchase particular assets of Ultroid provided Dragon Jade

satisfied certain conditions (Doc. 1-1), while the other agreement (the Security Agreement) set forth the terms of security and collateral for the Option Agreement. (Doc. 1-2). Michael Knox, an executive at one or more of the Ultroid entities at the time, executed both agreements on the companies' behalf. (Docs. 1-1, 1-2).

Ultroid answered Dragon Jade's complaint in February 2018 and asserted various affirmative defenses and counterclaims, the latter of which it amended a year later. (Docs. 40, 126). Of relevance here, Ultroid's amended counterclaims were predicated on, among other allegations, that Knox lacked the legal authority to bind Ultroid to the Option and Security Agreements, and that the Agreements were entered into under fraudulent and coercive circumstances. (Doc. 126). In support of these allegations, Ultroid asserted, *inter alia*, that Dragon Jade's representatives bribed and extorted Knox into signing the Agreements, including by paying him more than $15,000 and threatening to release embarrassing photographs of him in compromising positions taken during his visits to Hong Kong. *Id.* at 6, 11-14.

During the course of discovery, Dragon Jade propounded numerous requests on Ultroid, including document requests served in April 2018. (Doc. 160-1). By way of those document requests, Dragon Jade sought the disclosure of, among other items, all materials evidencing and/or supporting Ultroid's allegation that "Dragon Jade threatened to release embarrassing and inappropriate photographs that its representatives had taken of Mr. Knox during his visits to Hong Kong . . ." (Request No. 49); and all documents evidencing and/or supporting Ultroid's statement that "Dragon Jade used threat(s), intimidation, manipulation, coercion, blackmailed,

2

and/or fraud to get Mr. Knox to execute the Agreements on behalf of Ultroid" (Request No. 54).

Ultroid responded to Dragon Jade's production requests in May 2018 (Doc. 160-2) and, contemporaneously with that production, provided a privilege log identifying only one item—an April 23, 2018, valuation of Ultroid (Doc. 148-1).

Roughly six months later, in late November 2018, Dragon Jade commenced Knox's deposition. (Docs. 159-2, 159-3). Knox was represented by counsel at that deposition and was questioned for approximately four hours by Dragon Jade's attorney. *Id.* At the beginning of the deposition, Dragon Jade asked Knox, "before today, have you spoken to anyone other than your attorney about any of the facts or issues in this lawsuit?" (Doc. 159-2 at 9). Knox answered, somewhat non-responsively, that he had not "spoken to anybody about [his] testimony." *Id.* During the remainder of the deposition, Knox asserted his Fifth Amendment rights multiple times on advice of counsel and refused to answer certain questions related to his involvement with the Dragon Jade/Ultroid interactions and Agreements. *Id.* Due to scheduling issues, Knox's deposition was suspended with the understanding that it would continue at a future date. (Doc. 159-3 at 34-35).

Approximately two weeks later, on December 2, 2018, Ultroid served Dragon Jade with an amended privilege log, disclosing for the first time the existence of a "Transcript of sworn statement of Michael Knox" (the Sworn Statement), which had been taken on January 30, 2018, and which Ultroid claimed to be protected under both the work product doctrine and the attorney-client privilege. (Doc. 148-2). The

3

amended privilege log stated that Knox gave this statement while still employed by Ultroid and that it described "the circumstances of negotiation and execution of the Option and Security Agreements and the relationship between Dragon Jade and the Ultroid Companies." *Id.*

The discovery period closed on December 6, 2018, four days after Ultroid's service of its amended privilege log. (Doc. 74). The Court, however, allowed certain limited discovery after this deadline, including the continuation of Knox's deposition. (Doc. 106).

That deposition resumed on January 15, 2019. (Doc. 159-4). During that proceeding, Knox—who was again represented by counsel—asserted his Fifth Amendment rights and refused to answer any substantive questions. *Id.*

In mid-June 2019, both Dragon Jade and Ultroid moved for partial summary judgment. (Docs. 133, 134). Ultroid responded to Dragon Jade's motion two weeks later and included with its response excerpts from Knox's Sworn Statement (Doc. 138-3), which Ultroid claims demonstrate disputed issues of fact (Doc. 138 at 3-8). At Dragon Jade's request, Ultroid emailed Dragon Jade's counsel a complete copy of the Sworn Statement on July 9, 2019. (Doc. 148-4).

Dragon Jade now requests that the Court sanction Ultroid pursuant to Federal Rule of Civil Procedure 37(c)(1) by precluding it from using Knox's Sworn Statement. (Doc. 148). In support of this request, Dragon Jade argues that Ultroid failed to timely disclose the Sworn Statement's existence during discovery and instead improperly withheld it as attorney-client and work-product protected only to

4

subsequently "ambush" Dragon Jade in an effort to defeat Dragon Jade's partial summary judgment motion. *Id.* In addition, Dragon Jade asks that Ultroid be ordered to produce all withheld documents pertaining to the Sworn Statement and to pay Dragon Jade's reasonable expenses caused by Ultroid's belated disclosure. *Id.*

In response, Ultroid argues that, "out of an abundance of caution," it timely and adequately disclosed the existence of the Sworn Statement in its amended privilege log, but later decided to waive the attorney-client and work-product protections[1] so that it could use the statement in responding to Dragon's Jade summary judgment motion. (Doc. 154).

The Court heard oral argument on the matter in late September 2019. Following that hearing, the parties submitted additional materials, including a full copy of Knox's Sworn Statement, a full copy of Knox's deposition, as well as Dragon Jade's requests for production and Ultroid's responses thereto. (Docs. 159, 160). A trial in this case is expected to take place in the next several months.

II.

Rules 26 and 37 of the Federal Rules of Civil Procedure establish the framework for resolving the instant dispute. Rule 26(a) states, in relevant part, that "a party must, without awaiting a discovery request, provide to the other parties . . . a copy—or a description by category and location—of all documents, electronically

---

[1] At oral argument, Ultroid conceded that the attorney-client privilege was inapplicable to the Sworn Statement but maintained that it was entitled to work-product protection. Dragon Jade does not dispute that the Sworn Statement fell within the ambit of the work product doctrine prior to its disclosure.

stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . " Fed. R. Civ. P. 26(a)(1)(A)(ii). Rule 26(e) additionally requires that any party who has made disclosures under Rule 26(a) or who has responded to interrogatories, requests for production, or requests for admission to supplement or correct these disclosures or responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

A violation of these obligations can trigger the imposition of sanctions under Rule 37. In particular, Rule 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The advisory committee notes explain that this "automatic sanction [of exclusion] provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56." Fed. R. Civ. P. 37(c)(1), advisory committee's note to 1993 amendment. Rule 37(c)(1) further provides that, in addition to or in lieu of exclusion, courts may: (1) "order payment of reasonable expenses, including attorney's fees, caused by the failure;" (2) "inform the jury of the

party's failure;" and (3) "impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A)-(C).

Where, as here, a party seeks to enforce Rule 37's sanctions, "[t]he burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quotation omitted). In addressing this issue, reviewing courts consider the nondisclosing party's explanation for the failure, the importance of the information, and whether the opposing party is prejudiced by the discovery violation. *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)). The Eleventh Circuit has observed that the first and third factors, together, can outweigh the second. *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004) ("Regardless of the importance of [the] testimony, the reasons for the delay in the . . . disclosure and the consequent prejudice that [the] testimony would have caused [the nonmoving party] require us to affirm the district court's ruling.").

In the end, the Court has substantial discretion in deciding whether and how to impose sanctions under Rule 37. *Long v. East Coast Waffles, Inc.*, 762 F. App'x 869, 871 (11th Cir. 2019); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997). On appeal, a court's resolution of a discovery violation will be upheld absent an abuse of that broad discretion. *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019). "An abuse of discretion occurs only when the district court relies on a clearly erroneous finding of fact or an errant conclusion of law, or improperly

applies the law to the facts." *Id.* (citing *Adams v. Austal U.S.A., LLC*, 754 F.3d 1240, 1248 (11th Cir. 2014)).

A.

The Court first dispenses with Ultroid's assertions that it had no obligation to disclose the existence and substance of Knox's Sworn Statement under Rule 26 and that Rule 37(c) is inapplicable to the circumstances here. Neither of these assertions has merit.

As Dragon Jade correctly points out in its submissions (Docs. 148, 160), Knox's Sworn Statement was responsive to multiple requests for production it propounded on Ultroid in April 2018. By way of example and without attempting to be exhaustive, Knox discusses in the Sworn Statement that Dragon Jade threatened to release embarrassing photographs of him and used coercive means to get him to sign the Agreements.[2] As such, Ultroid was required to disclose at least the existence of the Sworn Statement in a privilege log in early May 2018 when it responded to Dragon Jade's discovery requests.

---

[2] In addition to Request Nos. 49 and 54 highlighted above, *see supra* at 2-3, the Sworn Statement was subject to a number of other document requests, including but not limited to, those that sought materials relating to certain meetings between Dragon Jade and Ultroid in 2018 (Request Nos. 42 and 45). The Court is not persuaded by Ultroid's suggestion that, in responding to these requests, it did not need to list the Sworn Statement in its initial privilege log because the requests were vague, ambiguous, and overly broad. (Doc. 154 at 6-7). This argument is underdeveloped and runs contrary to the Middle District of Florida's Discovery Handbook, which provides, in pertinent part, that "[i]f a party objects to a request as overbroad when a narrower version of the request would not be objectionable, *the documents responsive to the narrower version ordinarily should be produced without waiting for a resolution of the dispute over the scope of the request*." MIDDLE DISTRICT DISCOVERY (2015) at 12 (emphasis added).

The Middle District of Florida's Discovery Handbook, which the Court considers to be "highly persuasive in addressing discovery issues," *id*. at 1, is instructive in this regard. The Handbook states, in relevant part, that "[a] party who responds to or objects to discovery requests and who withholds information otherwise discoverable, asserting that the information is privileged or subject to other protection from discovery, must assert the claim expressly." *Id*. at 20. The Handbook further provides that a party's "[w]ithholding of materials without notice is contrary to Rule 26 and may result in sanctions." *Id*.

Here, Ultroid waited until December 2, 2018—nearly seven months after its initial responses to Dragon Jade's production requests and only four days before the close of discovery—to amend its privilege log to include a reference to the Sworn Statement. While the Court disagrees with Dragon Jade's contention that Ultroid insufficiently described the Sworn Statement,[3] the Court is troubled by the fact that this disclosure was made at the eleventh hour. By the Court's consideration, Ultroid's belated amendment of its privilege log violates both the letter and spirit of Rule 26(e) that a party must supplement its responses to production requests "*in a timely manner* if the party learns that in some material respect the . . . response is

---

[3] Rule 26(b)(5) governs the extent to which a party must disclose the nature of otherwise discoverable information it claims to be privileged or subject to protection. In particular, it requires that a party withholding such information must "describe the nature of the documents" not disclosed "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). The Court finds here that—although untimely—Ultroid's description of the Sworn Statement in its amended privilege log satisfies Rule 26(b)(5).

incomplete or incorrect. . . ." Fed. R. Civ. P. 26(e)(1) (emphasis added). The same can be said of Ultroid's failure to timely amend its Rule 26(a) initial disclosures. *Id.*

Nor is the Court persuaded by Ultroid's contention that Rule 37(c)(1) does not apply to its failure to timely supplement its discovery disclosures and responses. Ultroid does not cite any decisional authority to support this assertion, and the cases the Court has found on the matter are to the contrary. *See*, *e.g.*, *Schwarz v. Villages Charter School, Inc.*, 2017 WL 88951, at *3 (M.D. Fla. Jan. 10, 2017) ("Rule 37(c) allows the court to impose sanctions, such as barring the introduction of certain evidence, where one party has failed to provide information as required . . . by Rule 26(e), governing responses to requests for production and other discovery vehicles."); *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 409 (E.D.N.C. 2014) (noting that Rule 37(c)(1)'s sanctions apply to a party's failure to supplement written responses to requests for production) (citations omitted), *aff'd*, 2019 WL 3493900, ___ F. App'x ___ (4th Cir. Aug. 1, 2019); *Rivera v. Volvo Cars of North America, LLC*, 2015 WL 11089501, at *3 (D.N.M. July 20, 2015) ("The Court agrees that Rule 37(c) authorizes the imposition of sanctions based upon a parties' failure to supplement responses to requests for production with responsive documents.").

B.

The next issue then is whether Ultroid's failure to timely amend its privilege log, as well as its discovery disclosures and responses, was substantially justified or harmless. The Court addresses each of these questions in turn.

Substantial justification for purposes of Rule 37 may be found where the withholding party's action "is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). In an attempt to show that its actions were substantially justified here, Ultroid submits that its decision to add the Sworn Statement to its privilege log was made "out of an abundance of caution," "in advance of the remaining fact depositions," and "after evaluating the testimony provided by . . . Knox during his first deposition." (Doc. 154 at 8-9). And, it argues, its determination to use the Sworn Statement at the summary judgment stage was made only after reviewing Dragon Jade's summary judgment motion. These explanations are unsupported.

Beginning with the privilege log, as noted above, Ultroid was obligated to disclose the existence of the Sworn Statement in May 2018 in response to Dragon Jade's discovery requests. The fact that it did not constituted a violation of the discovery rules. That error was compounded by Ultroid's failure to amend its privilege log until nearly seven months later and only four days prior to close of discovery. Moreover, even then, it asserted that the Sworn Statement was protected, at least in part, by the attorney-client privilege, which it now belatedly concedes is

not the case.[4] In light of these facts, Ultroid has not shown that its extended delay in notifying Dragon Jade of the Sworn Statement's existence was substantially justified.

The Court reaches the same conclusion with respect to Ultroid's belated disclosure of the Sworn Statement itself. While Ultroid maintains it did not realize it would rely on the Sworn Statement until late June 2019 after it analyzed Dragon Jade's summary judgment motion, it fails to explain what about Dragon Jade's summary judgment motion led Ultroid to reach this determination and why it took until that point for it to make that assessment.

This lack of an explanation is conspicuous given the circumstances present in this case. It is uncontested in this regard that Knox is a significant—if not key— witness and that his testimony is central to many of the facts and issues in dispute. It is also evident that Ultroid was aware by at least the time of Knox's deposition in late November 2018 that he would be asserting the Fifth Amendment in response to substantive questions. Indeed, in opposing Dragon Jade's efforts to resume Knox's deposition beyond November 2018, Ultroid argued that the parties knew that Knox would "plead the Fifth throughout the course of the deposition" and that it was

---

[4] Ultroid's reliance on the attorney-client privilege—which turned out to be unfounded— likely made it appear to Dragon Jade that it would be even more difficult for it to overcome Ultroid's claims of protection. The Court notes in this regard that the confidentiality of attorney-client privileged communications is considered "one of the most sacrosanct principles of the law," *Reuter v. Physicians Cas. Risk Retention Grp.*, 2017 WL 395242, at *4 (S.D. Fla. Jan. 27, 2017), and is "traditionally deemed worthy of maximum legal protection," *Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (quoting *State Farm Fla. Ins. Co. v. Puig*, 62 So. 3d 23, 27 (Fla. Dist. Ct. App. 2011)).

"clear" even then he "w[ould] not provide the testimony *either* party needs or desires." (Doc. 101 at 12) (emphasis added).

Given this acknowledgment, it strains credulity that Ultroid did not realize prior to the close of discovery in early December 2018 that it might seek to use the Sworn Statement at the summary judgment stage and would therefore need to supplement its discovery responses and disclosures. Yet, as noted above, Ultroid waited until late June 2019 to disclose excerpts of the Sworn Statement to Dragon Jade and only provided a full copy of the Sworn Statement to Dragon Jade roughly two weeks later.

In these circumstances, Ultroid's position that it was substantially justified in making such a belated disclosure of the Sworn Statement itself is insufficient to meet its burden and instead stands Rule 26 on its head. As one court has observed, the discovery rules in general—and Rule 26(e)'s supplementation requirements in particular—are "intended to ensure timely disclosure of relevant information, not to permit a party to withhold information for self-interested reasons and then disclose it only when such disclosure becomes advantageous." *Glock, Inc. v. Glob. Guns & Hunting, Inc.*, 2015 WL 13614255, at *3 (N.D. Ga. Mar. 30, 2015) (discussing a party's invocation of Fifth Amendment rights during discovery and subsequent waiver at summary judgment stage).

Nor does the Court find that Ultroid's actions were harmless. As noted above, discovery in this action has long ago closed, dispositive motions have been filed, and trial is likely to take place in the next several months. Further, as also

13

noted, Knox is a key witness, Dragon Jade has been unable to obtain Knox's deposition testimony due to his assertion of his Fifth Amendment rights, and Knox's Sworn Statement is the only substantive testimony he appears willing to give. Yet, Ultroid elected to withhold the statement until well after the entire discovery process closed, which precluded Dragon Jade from challenging Knox's invocation of his Fifth Amendment rights based on the statement and questioning him or any other witness on that evidence. Apart from its claim that it is entirely appropriate to simply waive a privilege at the summary judgment phase, Ultroid presents no meaningful argument that its failure to disclose the Sworn Statement at an earlier juncture is harmless.

Ultroid's effort to shift at least some the blame on this issue to Dragon Jade is unavailing. Ultroid argues in this regard that Dragon Jade could have moved to overcome Ultroid's assertions of the attorney-client and work-product protections and compel the production of the Sworn Statement. This argument fails. To begin, the burden is on Ultroid, not Dragon Jade, to show that its untimely disclosure of the Sworn Statement's existence and the Sworn Statement itself was substantially justified or harmless.

Regardless, the Court is not in a position to opine on how it would have ruled on a hypothetical motion to compel disclosure of the Sworn Statement. While Ultroid has now discarded the attorney-client privilege as a basis for withholding the document, the Court cannot assume that Ultroid would have relinquished its assertion of that privilege if Dragon Jade had moved to compel the release of the

Sworn Statement during the discovery period. Similarly, although Ultroid stands behind its assertion of the work-product doctrine and Dragon Jade does not dispute that claim, the Court is left to speculate whether Ultroid would have alleged that it was fact work product or opinion work product, or some combination of the two. While witness interviews and statements are classic examples of work product, *Hickman v. Taylor,* 329 U.S. 495, 511 (1947), "the task of drawing a line between what is fact and what is opinion can at times be frustrating and perplexing," *Florida House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 947 (11th Cir. 1992). The Court cannot analyze, retrospectively and in a vacuum, whether Ultroid's fact and/or opinion work product assertions would have been valid or how it would have resolved a motion to overcome such claim(s). On this motion, it is Ultroid's burden to prove that the untimely disclosures of both the existence and contents of the Sworn Statement were substantially justified or harmless—a burden it has not carried here.

C.

Dragon Jade's remaining requests, including its request for reasonable expenses, are denied. As to Dragon Jade's brief reference to excluding the Sworn Statement for use at trial (Doc. 148 at 1), the Court declines to make a ruling on the use of the Sworn Statement for all purposes at this juncture. In light of the complicated issues associated with Knox's assertion of his Fifth Amendment rights, whether the Sworn Statement operates as any form of a waiver of those rights, the looming questions about whether the parties will seek to elicit his testimony at trial,

and the lack of sufficient briefing on these matters, the Court finds that the Sworn Statement's use at trial is best left for resolution either on separate motion or at trial.

And, finally, while Dragon Jade also asks for a Court Order requiring "Ultroid to produce all withheld documents that pertain to the Sworn Statement" (Doc. 148 at 9), the only document it identifies is the April 23, 2018, valuation, *see* (Doc. 148-1). That valuation did not exist at the time of the Sworn Statement, however, nor did Knox discuss it in that statement. The Court fails to see how Ultroid should be deemed to waive its work-product protection as to this document created months after Knox's Sworn Statement was taken. Dragon Jade identifies no other withheld documents that "pertain" to the Sworn Statement, and Ultroid represents that none exist. (Doc. 154 at 12).

III.

In light of the foregoing, *Dragon Jade's Motion for Sanctions Pursuant to Fed. R. Civ. P. 37* (Doc. 148) is granted in part and denied in part. The Court will exclude Ultroid's references to and reliance on Knox's Sworn Statement in its opposition to Dragon's Jade's motion for partial summary judgment. To the extent not granted hereby, the remainder of Dragon Jade's motion is denied.

DONE and ORDERED in Tampa, Florida, this 12th day of November 2019.

*[Signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

16

Copies to:
Counsel of record