UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DRAGON JADE INTERNATIONAL, LTD.**, a British Virgin Island limited company,

CASE NO: 8:17-cv-2422-T-27TBM

    Plaintiff/Counter-Defendant,

vs.

**ULTROID, LLC**, a Nevada corporation; **ULTROID MARKETING DEVELOPMENT CORP.**, a Florida corporation; **ULTROID TECHNOLOGIES, INC.**, a Florida corporation,

    Defendants/Counter-Plaintiffs.
_____/

### DEFENDANTS/COUNTER-PLAINTIFFS' MOTION TO DISMISS AND MOTION FOR DEFAULT FOR LACK OF PROSECUTION AND FAILURE TO COMPLY WITH COURT ORDER

Defendants/Counter-Plaintiffs, Ultroid, LLC., Ultroid Marketing and Development Corp., and Ultroid Technologies, Inc. (collectively "Ultroid"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 41(b), Fed. R. Civ. P. 55, and this Court's inherent authority, hereby file this Motion to Dismiss and Motion for Default for Lack of Prosecution and for Failure to Comply with Court Order:

### Introduction and Statement of the Case

Dragon Jade is a Hong Kong based, tax-exempt company, incorporated in the British Virgin Islands.[1] It filed this lawsuit in October 2017, seeking damages, injunctive relief, and to foreclose upon Ultroid's intellectual property assets. [Doc. 1]. A central issue throughout this case has been the enforceability of Option and Security Agreements

---
[1] *See* F-1P24 "Competitive Advantage", p. 40, https://www.sec.gov/Archives/edgar/data/1456787/000121390018015729/ff12018_dragonjadeinter.htm.

("Agreements") that purport to grant Dragon Jade a security interest in, and an exclusive right to purchase, Ultroid's patented hemorrhoid treatment technology. Ultroid alleges (and the evidence demonstrates), that Dragon Jade engaged in substantial fraud and illegality in the formation, execution and attempted enforcement of the Agreements.

Ultroid argued the Agreements were invalid due to the lack of shareholder approval required before a corporation may sell all or substantially all of its assets. In moving to dismiss Ultroid's Counterclaims on that issue, Dragon Jade disavowed ownership of Ultroid's patented technology, arguing that the Agreements called for nothing more than an option to negotiate the purchase of Ultroid's technology at a later date. [Doc. 127, pp. 20-21] ("The plain language of the EORA makes it clear that its execution is *not a sale of any of the Assets* but rather provides Dragon Jade with an exclusive and irrevocable option to have a period to exclusively negotiate the full terms of a potential purchase of the Assets….") (emphasis in original). The Court accepted Dragon Jade's argument and dismissed Ultroid's counterclaims for Recission on that point. [Doc. 134, pp. 9-11.]

After securing that victory, and notwithstanding the arguments made before this Court, Dragon Jade stepped up its international efforts to patent, market, and distribute Ultroid's technology as if it were its own. For example, Dragon Jade's website claims that it owns the Ultroid technology and invites others to apply to be Dragon Jade's distributor of Ultroid products.[2] In its 6k submissions to the SEC, Dragon Jade touts that it is the "[e]xclusive hemorrhoids treatment technology owner and provider."[3] Its business model is focused heavily upon using Ultroid's technology throughout Hong Kong, Mainland China, other Asia Regions, Europe, and North America.[4] Using Ultroid's stolen

---

[2] *See* https://www.dragonjade.com/copy-of-history (last visited October 2, 2020).
[3] *See* https://www.sec.gov/Archives/edgar/data/1456787/000121390019007497/f6k043019ex99-1_dragonjade.htm, slide 7 (last visited October 2, 2020).
[4] *Id.* at p.6

2

technology, Dragon Jade has applied for patents with the Chinese FDA (CFDA).[5] Dragon Jade expected to obtain approval from the CFDA by December 2019.[6] This must be what Dragon Jade means when it says "since January 2020, [its] business has been severely affected by the (sic) COVID-19." [Doc. 193 p. 1.]

Dragon Jade has repeatedly delayed this case and moved for continuances and extensions throughout this litigation. Although Dragon Jade's Motion for Preliminary Injunction was denied [Doc. 38], Ultroid has been unable to effectively move forward with its operations due to the pendency of this lawsuit. This is particularly true considering the Agreements' proscription against any proposed transfer, encumbrance, or hypothecation of Ultroid's assets. (*Id.* at p. 12.). Continued delays are depriving Ultroid of its competitive advantage and use of its intellectual property. This has and continues to cause significant financial harm and prejudice to Ultroid and its shareholders. By continuing to delay this case, Dragon Jade is effectively running out the clock on Ultroid's U.S. patents, while simultaneously using Ultroid's technology to apply for Chinese patents and to sell Ultroid's patented medical devices throughout the world.

Dragon Jade is attempting to delay the trial yet again, this time due the purported difficulty in securing its third set of attorneys. This, despite the agreement between the parties that Dragon Jade would *not* use the withdrawal of its counsel as grounds to further delay trial. As set forth herein, the record demonstrates that Dragon Jade's failure to meaningfully participate in this litigation has persisted far longer than the recent withdrawal of counsel, and indeed, longer than the COVID-19 pandemic. By continuing to delay this case, Dragon Jade is effectively achieving the relief it demands in this lawsuit – not through a trial by jury, but by running out the clock on Ultroid's patents while to continuing to profit from the use of Ultroid's stolen technology abroad. Dragon Jade's

---

[5] *Id.* at p. 5
[6] *Id.* at p. 16.

failure to meaningfully participate in this litigation, to secure counsel, and to comply with Court orders, should result in a dismissal of Dragon Jade's claims and a default entered on Ultroid's counterclaims.

**Procedural History**

This case was initially set for trial on the April 1, 2019 trial docket. The case was continued several months before that trial term due to the withdrawal of Dragon Jade's former attorneys from the Pillsbury Winthrop law firm. [Doc. 69, 70, 74]. After the substitution by Dragon Jade's successor attorneys from the K&L Gates law firm, the case was continued from the April 2019 trial term to the May 2019 trial term, [Doc. 74], then to the September 2019 trial term, [Doc. 123], then to the December 2019 trial term, [Doc. 150], and then to the October 2020 trial term. [Doc. 180].

On September 4, 2020, Dragon Jade filed another Motion to Continue Trial and, simultaneously, a motion to allow its attorneys from K&L Gates to withdraw as counsel. [Docs. 182; 183]. Ultroid opposed the Motion to Continue Trial [Doc. 185], but did not oppose the Motion to Withdraw. The Court conducted a hearing on the motions on September 10, 2020. As stated during that hearing, Ultroid's consent to the Motion to Withdraw was based strictly upon the agreement that Dragon Jade would not use the withdrawal of counsel as grounds to seek a further continuance of this case. If Dragon Jade were to use that withdrawal as a reason to further delay trial, and as explicitly stated on the record, Ultroid would have vehemently opposed that motion.

On September 11, 2020, the Court entered an Order granting Dragon Jade's Motion to Continue Trial and allowing Dragon Jade's attorneys from K&L Gates to withdraw as counsel. [Doc. 189.] Per this Court's Order, the October trial was postponed in light of the

4

ongoing COVID-19 pandemic.⁷ (*Id.* at p. 3.) A Zoom Status Conference is scheduled for October 6, 2020, and a Final Pretrial Conference is scheduled for October 22, 2020. (*Id.* at p. 4.) Noting the well-established rule that corporate entities cannot proceed *pro se*, Dragon Jade was given until October 2, 2020 to retain successor counsel and was warned that the failure to do so may result in a dismissal of Dragon Jade's claims and/or a default being entered against it on Ultroid's counterclaims. (*Id.*)

Three days after the Court's order, and notwithstanding the agreement surrounding K&L Gates withdrawing as counsel, on September 14, 2020, Dragon Jade, *pro se,* sent a letter to the Court requesting a continuance until a date after January 1, 2021, to allow it an opportunity to secure new counsel and prepare for trial.⁸ [Doc. 193.] The Court entered an Order striking the construed motion to continue, and again advised Dragon Jade that corporate entities must be represented as counsel. [Doc. 194.]

Two weeks later, on September 28, 2020, Dragon Jade, *pro se*, sent another letter to the Court requesting an extension until January 2021 to find new counsel. [Doc. 195.] That request cited the economic hardships caused by COVID-19 and Dragon Jade's purported lack of employees with a U.S. visa as the reasons why it has been unable to secure new counsel. Dragon Jade acknowledged its request was inappropriate, but appealed to this Court's sense of justice and Dragon Jade's faith in the U.S. legal system. (*Id.*)

The Court entered an Order striking the construed motion for extension of time, and again explained that corporate entities must be represented by counsel. [Doc. 196.] The Court further instructed Dragon Jade to appear at the October 6, 2020 Zoom status

---

⁷ The Motion to Continue was granted inasmuch as the Court recognized it would not be feasible to conduct the trial in October due to the COVID-19 pandemic. The Court did not address the merits of Dragon Jade's requested continuance, which was based upon the purported health concerns of its CEO. [Doc. 189 p. 3.]

⁸ Dragon Jade loosely claimed that COVID-19 restrictive measures made it difficult to secure new counsel and transfer files from K&L Gates. [Doc. 193 p. 1.] However, in the Motion to Withdraw, the K&L Gates attorneys committed to promptly transfer Dragon Jade's files to new counsel and to otherwise do its part in effecting a smooth transition of the matter. [Doc. 183, p. 5.]

5

conference to discuss scheduling as well as Dragon Jade's efforts to secure new counsel. (*Id.*)

On September 29, 2020, the Court entered an Order granting in part and denying in part Dragon Jade's Motion for Partial Summary Judgment on Ultroid's Counterclaims. [Doc. 197.] The Court granted Dragon Jade's Motion with respect to Ultroid's Counterclaim under the Florida Deceptive and Unfair Trade Practices Act. Citing to the evidence of Dragon Jade's blackmail, extortion, and fraud, the Court concluded that a reasonable jury could find that Dragon Jade engaged in deceptive and unfair practice that led to Ultroid executing the Agreements. (*Id.* at p. 10-11.) However, summary judgment was granted on that claim due to a finding that Ultroid failed to establish actual damages arising from the deceptive and unfair conduct. (*Id.* at p. 12.) The Court denied Dragon Jade's Motion in every other respect, finding there was sufficient evidence of fraudulent and illegal conduct to support Ultroid's claims for Recission, Fraud in the Inducement, and Civil Conspiracy. (*Id.* at p. 12-17.)

## Memorandum of Law

Dragon Jade failed to secure counsel by the October 2, 2020 deadline set by this Court's Order. [Doc. 189.] Dragon Jade has known for more than a year that its failure to pay its attorneys' fees would result in the need to retain new counsel. Likewise, Dragon Jade knew that its failure to provide K&L Gates with clear and proper direction as to how to proceed in the matter, and also its failure to cooperate in K&L Gates' representation, would lead to a withdrawal of its attorneys. [Doc. 183 p. 2-3.] At a minimum, the record establishes that Dragon Jade was explicitly informed "several months" before August 2020 that the attorneys from K&L Gates would be withdrawing as counsel. As noted by this Court, corporate entities cannot proceed *pro se* and must instead be represented by

6

counsel. Despite multiple warnings and ample opportunity, Dragon Jade failed to retain counsel or to meaningfully prepare this case for trial.

It is well established that a corporation is an artificial entity that can only act through agents, cannot appear *pro se,* and must be represented by counsel. *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir. 1985); M.D. Loc. R. 2.03(e). Indeed, "it has been the law for the better part of two centuries ... that a corporation may appear in federal courts only through licensed counsel." *Marshall v. Wells Fargo Advisors, LLC,* 668 F. App'x 874 (11th Cir. 2016) quoting *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) (affirming dismissal of a complaint filed by corporate entities for failing to secure counsel after being informed of the requirement to do so)). Dragon Jade has been advised of this requirement on at least three occasions and was explicitly warned that the failure to secure successor counsel may result in a dismissal of its claims and a default on Ultroid's counterclaims. [Docs. 189; 194; 196.] Nonetheless, Dragon Jade failed to secure counsel in accordance with the Court's instructions and applicable law.

Rule 41(b) of the Federal Rules of Civil Procedure provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed.R.Civ.P. 41(b). "Rule 41(b) recognizes the inherent authority of district courts to involuntarily dismiss a claim ... for want of prosecution to prevent undue delays in the disposition of pending cases and to avoid congestion of court calendars." *See Abrams v. Orange Cnty. Sheriff,* 2014 WL 3057107, *2 (M.D. Fla. July 7, 2014); *See also Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir. 1985) ("The court's power to dismiss is an inherent aspect of its authority to enforce its orders and insure prompt disposition of

lawsuits.") citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, (1962)). Rule 41(b) also permits a district court to dismiss actions for failure to comply with local rules. *Watts v. Ford Motor Co.*, 648 F. App'x 970, 973 (11th Cir. 2016).

Although a Rule 41(b) dismissal is considered an extreme sanction, it is appropriate where there is a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice. *Goforth*, 766 F.2d at 1535. A party's *pro se* status or indigency does not excuse willful noncompliance or preclude dismissal as a sanction. *See Ran v. Cook,* 2010 WL 3489923, at *2 (N.D. Fla. Aug. 30, 2010) (finding that the plaintiff's "*pro se* status and language difficulties" were not "the cause of her failures to comply with court orders, but rather her willful bad faith;" also noting monetary sanctions would not suffice because she lacked the funds to reimburse the expenses). Dismissals under Rule 41(b) are reviewed for abuse of discretion. *Id.* "While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

In addition to a dismissal of Dragon Jade's claims, the Court also has the authority to enter a default against Dragon Jade on Ultroid's counterclaims. Default judgment may be entered against a party who fails to defend against a complaint. Fed. R. Civ. P. 55. Courts have repeatedly held that entry of a default judgment is the proper sanction for a corporate party's failure to obtain counsel. *See Marshall v. Wells Fargo Advisors, LLC*, 668 F. App'x 874 (11th Cir. 2016) (affirming district court's decision to dismiss corporation from case because the corporation failed to obtain counsel); *Citadel Commerce Corp. v. Cook Sys., Inc.*, 2009 WL 1515736, at *1 (M.D. Fla. June 1, 2009) (default entered against corporate defendant for failure to secure counsel less than one month after its prior counsel was allowed to withdraw); *Kaplun v. Lipton,* 2007 WL 707383 (S.D. Fla. Mar. 5,

8

2007) (entering default judgment against corporate defendant for failure to obtain counsel per court order); *Tumi v. Wally's Waterfront, Inc.*, 2007 WL 678013 (M.D. Fla. Mar. 5, 2007) (finding entry of default judgment appropriate after corporate defendant failed to obtain counsel as directed by the court).

Turning to the case at bar, Dragon Jade failed to secure legal representation within the twenty-one days afforded by this Court's Order. Although the time provided by the Court is well in line with the time parameters established by the cases discussed *supra*, here, Dragon Jade has been on notice of the need to secure new counsel for many months before this Court's Order was entered. As noted in the Motion to Withdraw [Doc. 183 p. 3], Dragon Jade stopped paying its legal bills in September 2019 – well before the COVID-19 pandemic began. In addition, Dragon Jade failed to meaningfully respond to the K&L Gates attorneys' repeated attempts over several months and weeks to communicate substantively regarding the case. (*Id.*) Dragon Jade's lack of meaningful communication significantly impaired the K&L Gates attorneys' ability to represent Dragon Jade's interest.[9] (*Id.*) As a result, Dragon Jade was provided written notice on August 16, 2020, and again on August 20, 2020, of its attorneys' intent to withdraw as counsel. (*Id.*) Dragon Jade was given until August 28, 2020 to rectify the issue but failed to do so. The attorneys from K&L Gates continued to work an extra week after that date to communicate with Dragon Jade, "but those efforts were fruitless." (*Id.*)

As a result, the record demonstrates that Dragon Jade has known since at least early summer of 2020 that it would need to retain successor counsel. Thus, Dragon Jade had ample time to secure counsel in order to continue the prosecution and defense of this case. And yet, it failed to make any effort to do so. Moreover, Dragon Jade's failure to participate in this lawsuit cannot be reasonably attributed to the ongoing pandemic. As

---

[9] Presumably, this is why Ultroid's attempts to resolve this matter have gone unanswered.

demonstrated by Dragon Jade's recent letters to the Court, it has, at a minimum, the ability to communicate in writing. Apparently, it decided not to do even that with its former attorneys.

Dragon Jade also claims that additional time is needed to secure counsel due to the fact that it does not have any U.S. citizens as "employees," and is therefore having a difficult time sending someone to the United States to find new counsel. This argument is nothing more than a sleight of hand. Dragon Jade's corporate representative, Glenn Henricksen, is a U.S. citizen. (Henricksen Dep. 52:23-24 [Doc. 169-2, p. 52]; Henricksen Dec. ¶ 1 [Doc. 12-1].) Mr. Henricksen serves as the sole manager of Dragon Jade's subsidiary company, Kirin Jade, which is a Delaware corporation that was established to be the acquisition vehicle for the Ultroid assets. (Henricksen Dep. 53:17-55:16 [Doc. 169-2, pp. 54-56].) Although perhaps not classified as an "employee" of Dragon Jade, he is a consultant to Dragon Jade's Board of Directors, was significantly involved in the evaluation, negotiation, and implementation of the Agreements, and has served as the primary point of contact between Dragon Jade and its attorneys. (Henricksen Dep. 136:23-137:9 [Doc. 169-2, pp. 137-138]; Henricksen Dec. ¶ 1 [Doc. 12-1].) Moreover, Mr. Henricksen was appointed to serve as Dragon Jade's Corporate Representative to testify as to all matters related to this lawsuit. (Henricksen Dep. 6:11-16.) The Court should not be swayed by the disingenuous claim that the COVID-19 pandemic is preventing Dragon Jade from finding successor counsel.

Analyzing an issue similar to the case *sub judice*, the Eleventh Circuit determined that a foreign corporation was properly defaulted for failing to retain successor counsel, notwithstanding its claims that it was delayed in finding new counsel due to financial hardship and political unrest. *Compania Interamericana Export, Import, S.A., v. Compania Dominicana de Avaiacion*, 88 F.3d 948, 952 (11th Cir. 1996). In *Interamericana Export*, the

Eleventh Circuit noted that while the foreign corporation's difficulties may have been "real" and its noncompliance was not likely "willful" in a strict sense, the entry of default was nonetheless appropriate *Id.* Although some courts may consider culpability or willfulness in upholding defaults, the Eleventh Circuit rejected that approach, finding instead that "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Id.* (internal citations omitted). Thus, a party's subjective intent is immaterial to the analysis, and the Court need only consider the party's objective conduct in failing to comply with the Court's orders.

### **Conclusion**

Much like the foreign defendant in *Interamericana Export*, Dragon Jade has objectively failed to comply with this Court's order and has, by admission of its own attorneys, failed to meaningfully participate in this lawsuit for many months. Dragon Jade's pattern of delay has already deprived Ultroid of the "just, speedy, and inexpensive determination" of this action to which all parties are entitled. Fed. R. Civ. P. 1. From all available information, this is no accident, but rather is part of Dragon Jade's ongoing strategy to weaponize the U.S. legal system in order to continue its exploitation of Ultroid's patented technology.

For the reasons outlined above and as otherwise apparent on the face of the record, Dragon Jade's objective conduct supports the dismissal of its claims and entry of default on Ultroid's counterclaims.

WHEREFORE, Ultroid respectfully request this Court enter an Order dismissing Dragon Jade's claims with prejudice, entering a default judgment on Ultroid's counterclaims, and for such other and further relief as the Court deems just and proper.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 3, 2020, I electronically filed the foregoing with the Clerk of the Courts by using the CM/ECF system which will send a notice of electronic filing to William E. Lawton, Esq., and Jenna M. Winchester, Esq., P.O. Box 2928. A copy of this Motion was sent via U.S. Mail to Dragon Jade International, Ltd., Suite 2302, 23/F, New World Tower I, 18 Queen's Road Central, Hong Kong.

                                         /s/ *Joshua B. Walker*
                                       JOSHUA B. WALKER
                                       Florida Bar No. 0047614
                                       Walker, Revels, Greninger & Netcher PLLC
                                       189 S. Orange Ave, Ste. 1830
                                       Orlando, FL 32801
                                       Tel: 407-789-1830  Fax: 321-251-2990
                                       jwalker@wrgn-law.com
                                       Counsel for Defendants/Counter-Plaintiffs